## Staunton.

### ENGLEMAN v. ENGLEMAN.

#### SEPTEMBER 27, 1899.

1. APPEAL AND ERROR—*Suit in Chancery—Incompetent Evidence.*—This court will not reverse a decree in a chancery suit merely because incompetent and illegal evidence appears in the record. It will consider only the legitimate evidence and determine the rights of the parties upon that.

2. MARRIAGE AND DIVORCE—*Alimony—Counsel Fees—Case in Judgment.*— Under the facts in this case, the husband is not entitled to a divorce either for adultery or desertion, and the wife is not precluded by her deed from claiming an allowance for counsel fees in the suit for divorce brought against her by her husband. No such suit was had in view when the deed was made.

3. MARRIAGE AND DIVORCE—*Alimony—Counsel Fees in Court of Appeals—Husband's Liability.*—The measure of the husband's liability to pay the expenses of the wife's defence to a suit for divorce brought by him depends upon his ability to meet them, and, in the absence of anything in the record to guide this court, it will not make an allowance for fees of counsel in this court, but will adhere to the sum fixed by the trial court.

Appeal from a decree of the Circuit Court of Rockbridge county, pronounced November .17, 1898, in a suit in chancery wherein the appellant was the complainant, and the appellee was the defendant.

*Affirmed.*

This was a suit for a divorce from the bond of matrimony. The complainant charged his wife with desertion and with

adultery, both of which she positively and indignantly denied. The evidence is very voluminous, and no effort is made to condense it, as it would serve no useful purpose in understanding the opinion of the court which passes on the weight of the evidence. Both complainant and defendant testified in the cause, and each of their depositions was duly excepted to, but the decree disposing of the cause did not pass on the exceptions, although the opinion of the Circuit Court, which is made a part of the decree, speaks of the evidence of the complainant on a particular point as "inadmissible testimony in his behalf."

This suit was brought in August, 1897, and the bill charged, amongst other things, that the defendant had deserted the complainant on or about December 1, 1892. This was denied by the defendant, and a great volume of evidence was introduced *pro* and *con*. The relations of the parties, however, between the spring of 1894 and their final separation in August, 1895, was anything but conjugal. Indeed, the defendant, in her answer, says: " During the period from some time in the spring of 1894 and down to the time of their separation in August, 1895, life was almost unbearable to this respondent."

In August, 1891, the defendant's father settled upon her and her children, born and to be born, the sum of $3,675. The money was paid to complainant, but the trust was declared by a deed from the father to the complainant as trustee. The deed was signed by both the father and the complainant, and was duly admitted to record in Rockbridge county, where the complainant resided. This deed provides, amongst other things, " that the said fund shall be a lien upon any real estate the said trustee may possess."

After it became evident that husband and wife could not, or would not, come together, the wife, through her counsel, demanded the return of the trust fund, and a legal support for her and her children. This demand was made by the following letter:

Statement.

"LEXINGTON, VA., August 28, 1894.

Mr. Luther D. Engleman, Alone, Va.:

My Dear Sir,—Your wife and her father have been to see me this morning, and had a full interview with regard to your treatment of her, and the treatment of her by your employees and agents, and they have sought my advice as to the proper course for Mrs. Engleman to pursue, to have her legal rights administered to her; including the taking out of your hands as her trustee, and the trustee of her children, the fund placed in your hands by her father; as well as the application to the court to require you to give her and the children a legal support. Before instituting legal proceedings, I have thought best to call your attention to these matters, and to say that unless proper and satisfactory adjustment, in some manner satisfactory to Mrs. Engleman, is made that I shall take such legal steps as may be requisite to bring these matters to a proper settlement. I shall be glad if such an adjustment can be amicably reached. But if it cannot, I shall take the necessary legal steps to require the same to be done, and without delay.

"I shall be glad to learn your disposition with regard to the matter without delay.

"Yours very truly,

"FRANK T. GLASGOW."

"P. S.—In the event of legal steps, the costs and expenses will be heavy, and I shall expect to get decree against you for all costs."                              "F. T. G."

Envelope addressed: "Mr. Luther D. Engleman, Alone, Va., Rockbridge Co." Post-marks are indistinct.

By deed bearing date August 10, 1895, the complainant conveyed his tract of 204 acres of land to J. C. Boude, trustee, in trust to secure to Jacob M. Trout, trustee, for the defendant and

her two children, the sum of $3,700, payable in instalments covering a period of thirteen years, all bearing interest from date. This deed is signed and acknowledged by the complainant and the defendant, by J. C. Boude, trustee, and by Jacob M. Trout, trustee. After providing for a sale in case of default in the payment of any part of any one or more of the instalments, or of the annual interest thereon, it continues as follows:

"And the parties hereto accept the provisions herein contained and referred to, in full discharge and satisfaction of, and for, all obligations of the said L. D. Engleman, under a certain deed of trust, between said Jacob M. Trout and L. D. Engleman, bearing date on the 19th day of August, 1891, and recorded in the County Court clerk's office of Rockbridge county, in deed-book No. 72, at page No. 489; and the lien and obligation thereof is hereby released and discharged.

"And the said Engleman, it is understood, has the right to anticipate payment of said bonds, or any of them, before maturity.

"In consideration of the premises and of a lot of land in Roanoke county, Virginia, conveyed by the said L. D. Engleman to said Mollie S. Engleman, by deed of even date herewith, the said Mollie S. Engleman hereby acknowledges satisfaction at the hand of L. D. Engleman for any claim for alimony, contingent right to dower, dower, maintenance, and all other marital rights which she could or might make against said L. D. Engleman, or his estate, now or in future; and she hereby releases said L. D. Engleman, and any estate he now owns, or may hereafter acquire, from all dower, contingent right of dower, alimony, maintenance, and all other marital rights, or interest of any kind whatever which she has now or might hereafter have, or be entitled to otherwise in his estate, real or personal; and she further releases him from any liability for the maintenance, education, and support of their two children, hereinbefore

Statement.

named.   And the said L. D. Engleman agrees that the said two children are to remain, without interference or molestation from him, in the custody of the said Mollie S. Engleman, to be maintained, educated as she may deem practicable and expedient, and supported by her.   And he, the — L. D. Engleman hereby releases any interest, present or prospective, which he may now have or might hereafter acquire, in the estate, real or personal, of the said Mollie S. Engleman, it being the object and intention of each to release to the other, absolutely, whatever interest each may have in the property of the other, growing out of their marital rights, whether now owned by them, or hereafter acquired.   And each mutually agrees to execute any other paper or papers, deed or deeds, that may be necessary should such ever be the case, to carry out fully the agreement and understanding herein expressed.

" It is furthermore understood, as to the trust aforesaid, that the said L. D. Engleman is to have the right to sell and convey the farm so conveyed in trust, at any time, upon his paying the debt secured by this deed; in which deed the said Mollie S. Engleman is to unite if necessary.   And it is agreed between the said L. D. Engleman, Mollie S. Engleman, and the said Jacob M. Trout, trustee, that the corpus of the fund secured hereby to be paid to the said Trout, trustee, is to be reinvested by him under the order of a court of competent jurisdiction; the object of this provision being to protect and indemnify the said L. D. Engleman from any responsibility, or liability, for the safe re-investment of the same.

" Witness the following signatures and seals: "

    " L. D. ENGLEMAN,   [SEAL.] "
    " JOHN C. BOUDE, Trustee, [SEAL.]."
    " JACOB M. TROUT, Trustee, [SEAL.] "
    " MOLLIE S. ENGLEMAN.  [SEAL.] "

The other facts sufficiently appear in the opinion of the court.

*G. D. Letcher* and *J. P. Moore*, for the appellant.

*F. T. Glasgow* and *G. M. Bell*, for the appellee.

HARRISON, J., delivered the opinion of the court.

This suit was brought by the appellant in the Circuit Court of Rockbridge county to obtain a divorce from the appellee. The Circuit Court held that the appellant had failed to make a case entitling him to the relief asked, and dismissed his bill. From this decree an appeal was allowed by one of the judges of this court.

The first assignment of error is that the court erred in not excluding the testimony of the appellee. It appears that the depositions of both the appellant and appellee were taken in the cause, while it is conceded here by counsel on both sides that such evidence is wholly incompetent and illegal. There is nothing in the record to warrant the conclusion that the Circuit Court considered this illegal evidence, and the presumption is that it did not. The conclusion of this court will be based alone upon the legitimate evidence in the case, and therefore no injury can result from the presence in the record of the deposition of either the appellant or the appellee.

The second assignment of error is that the Circuit Court did not exclude certain letters produced by the appellee and filed in the record purporting to be letters written by her to appellant. In the view we take of this case, it is unnecessary to consider whether these letters are legal evidence or not. The case of the appellee does not rest upon these letters, and their consideration is not necessary in determining the issues involved.

The third assignment of error is that the court erred in decreeing alimony *pendente lite* contrary to the provisions of the contract and deed of trust of August 10, 1895.

At the date of the deed mentioned, it is clear that appellee did not have in view a suit by her husband for divorce. The

record in this case, covering nearly six hundred pages of printed matter, discloses a bitter assault upon the character of the appellee, prosecuted with relentless disregard of her feelings and reputation. The appellee not having divested herself, by the contract referred to, of the right to ask that her husband be required to pay the costs and expense of such a suit, we are of opinion that the sum of $250 allowed by the decrees complained of is without objection.

The fourth and fifth assignments of error are: First, that the court erred in not granting appellant a divorce *a vinculo* on the ground that appellee deserted the appellant on or about December 1, 1892; and, second, that the court erred in not granting appellant a divorce *a vinculo* on the ground of appellee's adultery with Samuel H. Guffey.

So far from the charge of desertion being sustained, it clearly appears that the appellee never deserted her husband, and never contemplated doing so.

The only evidence tending to establish the charge of adultery is that of Samuel Guffey, a married man and a laborer on appellant's farm, and Sally Guffy, a sister of Samuel. The former testifies to several occasions when he had sexual intercourse with appellee, at one time in the wheat field about two or three o'clock P. M.; again about a week later just after dinner in the ice-house; and again in the morning in a stall in the stable. This self-confessed degraded man is shown by the most conclusive evidence to have been offering himself for sale to testify in the case, as he expressed it, " for the money there was in it." As a witness, he is utterly discredited, and shown to be unworthy of belief. Sally Guffey is put upon the stand to corroborate Samuel. She testifies that she was an eye-witness to the act of adultery in the wheat field, that she was near enough to the offending parties to " spit on them," and made no sign or movement to indicate her presence. The evidence of this witness is inconsistent, incredible, and wholly insufficient to

sustain the charge. Appellee has abundantly established, by those who have known her longest and best, a virtuous character. No good reputation could stand, if such evidence as is here relied upon was regarded as sufficient to blast it.

A review of the mass of evidence in this record, upon the question of fact we are called upon to determine would be wholly without profit to any one. It is sufficient to say that, after a careful consideration of the whole case, we have no difficulty in reaching the conclusion that appellant has wholly failed to show himself entitled to the relief he asks.

In the brief for appellee counsel asks that this court make an allowance to appellee of a sum sufficient to pay reasonable counsel fees for representing her in this court.

The measure of appellant's liability to pay the expenses of appellee's defence depends upon his ability to meet such expenses, and in the absence of anything in the record to guide us in the matter, we must hold the allowance already made to be sufficient.

For these reasons the decree appealed from must be affirmed.

*Affirmed.*