## Wesley v. Wesley.

(Decided June 14, 1918.)

## Appeal from Pulaski Circuit Court.

1. Divorce—Review.—The Court of Appeals can not reverse a judgment, which grants a divorce, but, it may look into the record to determine whether the divorce should have been granted, to determine the right of the wife to alimony.

2. Divorce—Alimony.—In all cases where the husband obtains a divorce without the fault of the wife, she is entitled to alimony, and this includes the state of case where the divorce was erroneously granted to the husband and where the divorce should have been granted to the wife.

3. Divorce—Concealment of Fact of Previous Unchastity.—A concealment by the wife, from the prospective husband, that, she had previously been unchaste, is not a fraud, which will vitiate the marriage or constitute a ground for divorce.

4. Divorce—Bar.—Where the complainant has knowledge, at the time the marriage is contracted, of the cause of divorce, which he urges, it constitutes a bar to his action.

5. Divorce—Drunkenness of Wife.—The statute gives to the husband the right to complain of drunkenness on the part of the wife, when he is not in like fault.

6. Divorce—Evidence of Lewdness.—A charge of lewdness can not be substantiated by the proof of facts, which create a mere suspicion and which are harmless in themselves and do not necessarily indicate anything culpable.

7. Divorce—Charge of Adultery or Lewdness—Witnesses.—Under section 2119, Kentucky Statutes, one witness, without any corroborating circumstances, is not sufficient to sustain a charge of adultery or lewdness.

8. Divorce—Breach of Antenuptial Contract.—A breach of an antenuptial contract, to give the wife money or property, does not constitute a ground of divorce on the part of the wife, in the absence of a statute authorizing it.

9. Divorce—Unfounded Charge of Adultery.—Cruelty or settled aversion.—An unfounded charge of adultery against a wife does not constitute cruelty or evidence from which a settled aversion may be inferred, unless it is made in bad faith and in the absence of reasonable grounds for believing its truth.

10. Divorce—Alimony—Dower and Distributive Share.—Where a wife is entitled to a judgment from bed and board, she is entitled ordinarily to alimony, only, during the life of the husband, but, where her right to dower and distributive share in the husband's estate is barred by an erroneous judgment granting him a divorce from the bonds of matrimony, the value of her dower and distributive share, to which she would otherwise have been en-

titled, may be considered in determining the amount in alimony to which she is entitled.

H. C. KENNEDY for appellant.

C. H. WADDLE & SONS, E. T. WESLEY and WILLIAM M. CATRON for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

The appellee, James K. Wesley, abandoned his wife about the 16th day of November, 1917, and immediately instituted an action against her for a divorce from the bonds of matrimony. The wife, the appellant, Rosa L. Wesley, denying the truth of the grounds of divorce relied upon by the husband, averred the existence of grounds of divorce in her behalf against the husband, and by a counterclaim sought a divorce from him and a judgment for her costs and alimony. The court sustained the contentions of the husband and adjudged, that, he be divorced *a vinculo matrimonii,* but, denied the contentions of the wife and adjudged, that, her counterclaim should be dismissed. From the judgment the wife has appealed.

The statute denies this court the power to revise or reverse a judgment which grants a divorce, and to that extent the judgment must be sustained, however erroneous in our opinion it may be. Section 950, Ky. Stats. This, however, does not preclude this court from reviewing a judgment, which denies alimony, nor from looking into the record where divorce has been decreed, and without destroying the judgment to the extent that it grants the divorce, to determine whether the decree should have been rendered, as bearing upon the right of the wife to alimony. In all cases, where the husband obtains a divorce without the fault of the wife, she is entitled to alimony, and this includes the state of case where the judgment for divorce in favor of the husband was erroneously granted, and in the state of case where the divorce should have been granted to the wife. Lacey v. Lacey, 95 Ky. 110; Steele v. Steele, 27 R. 120; Davis v. Davis, 86 Ky. 32; Hulett v. Hulett, 80 Ky. 364; Shepherd v. Shepherd, 174 Ky. 615; Freeman v. Freeman, 11 R. 824; McClintock v. McClintock, 147 Ky. 409. If the facts are such, that the wife is entitled to a decree, either for a divorce *a vinculo matrimonii* or *a mensa et thoro,* she will be held, upon appeal, to be entitled to alimony, al-

though an erroneous decree has been rendered in favor of the husband granting to him an absolute divorce, or if the facts should be such as to not entitle the husband to a divorce, alimony for the wife must follow.

Hence, it becomes necessary to determine from the record whether the husband, in the instant case, was entitled to an absolute divorce or any divorce at all. He bases his claim for relief upon four grounds, as stated in his petition, as follows: (1) That the wife procured him to marry her by fraud and deceit, in that, previous to the marriage, she had been guilty of fornication and adultery and such lewd and lascivious conduct, as showed her to be unchaste, and that her reputation for chastity was bad, of all of which, he was ignorant and she fraudulently concealed same from him; (2) that, previous to the marriage, she had been pregnant by a man other than plaintiff and had sought to have an abortion produced upon her, and these circumstances she fraudulently concealed from him; (3) that previous to their marriage she had become addicted to the excessive use of intoxicating liquors and fraudulently concealed the habit from him, and after their marriage had continued the habit; (4) that after the marriage she committed adultery with persons, whose names he had been unable to learn, and was guilty of such lewd conduct as showed her to be unchaste.

The wife, by her answer, traversed all the averments of the petition, but admitted, that after she had become engaged to be married to the appellee, on one or two occasions and after the marriage, on one or more occasions, she had been intoxicated, but, that the use of liquors was upon the solicitation of the appellee and by his consent, and that he furnished the liquors and became drunk, at the same times, with her. By way of counterclaim, she sought a divorce from appellee upon three grounds, namely; (1) that, to induce her to marry him he fraudulently promised her, that, if she would do so, he would purchase and cause to be conveyed to her a certain dwelling house and would, also, give to her the sum of two thousand dollars, in money, all of which he had no intention of doing, at the time of the promise; (2) that for a period of six months, before her answer, he had habitually behaved toward her, in such a cruel and inhuman manner, as to indicate a settled aversion to her and permanently destroyed her peace and happiness, in that, he had refused and failed to provide her

with sufficient food and clothing, and that she was compelled to hire out and to work as a washerwoman to procure necessities, and had attempted to make her abandon him and had preferred an unfounded charge of adultery against her; (3) that, he had so cruelly beaten and injured her, that it showed an outrageous temper in him and probable danger to her life or great bodily injury to her, if she should remain with him, and that he finally deserted her after bringing this suit. These grounds set up by way of counterclaim and recrimination were all denied by a reply.

(a)   The first and second grounds of divorce, alleged by the husband, together, amount to an accusation, that previous to the marriage, the wife had been guilty of fornication or adultery and was unchaste, and that she had not divulged the fact of her guilt to the husband before the marriage. The parties had lived in the same neighborhood for a number of years and during the lifetime of the wife, which appellee had, previous to his marriage to appellant, the appellant had done services, as a servant, to some extent for the family of appellee, and there is no claim or showing that appellee and appellant were not well acquainted, previous to their marriage. The appellee was a widower, seventy-two years of age at the time of the marriage. He had five grown children, to each of whom he had given the sum of two thousand dollars, just previous to the marriage. The record does not disclose how long he had been a widower. The appellant was a young woman, twenty-eight years of age. She had been married twice before her marriage to appellee. She had a daughter, who, at the time of her marriage to appellee, was nine years of age, and who was the fruits of her first marriage. Her second marriage was to John Stone, in the year 1910. She and Stone lived together for a short time, when they separated. She obtained a divorce from Stone in February, 1917, about a month previous to her marriage to appellee on the 16th or 17th of March, 1917. In 1913, she gave birth to a child, which lived only a few days. She insists, that Stone was the father of this child, but the registrar of vital statistics testified, that, she stated to him, that a certain school teacher was its father. So far as it affects the determination of this case, it does not seem to be material, who the father of it was, as will be hereafter shown. The appellant averred in her answer and her

mother testified, that, she borrowed fifteen dollars from appellee with which to bury the child and stated to him at the time, why she desired to borrow the money and whose child it was, that was to be buried, and that just before appellant and appellee married, he forgave her the debt as a present, and although appellee testified two or three times about matters, which were competent for him to testify about, as well as incompetent matters, he made no denial of the fact that he furnished the money as above stated, and hence seems to have known all about it before the marriage. An aged physician, who was an uncle of the appellee, testified that at a time of which, he was totally unable to furnish the date or to approximate the date, appellant approached him and sought to procure him to create an abortion upon her. The witness, who was both an aged man and at that time confined in a hospital, was unable to say whether this occurred before or after the marriage of appellant and appellee or when it occurred, but the circumstances indicate that it was previous to her marriage to appellee and probably in the year 1913, as there is a total want of evidence that appellant ever underwent an abortion, at any time, and certainly not after her marriage to appellee, nor any time approximately near the time of their marriage or previous thereto, as there is no evidence of any confinement or sickness upon her part, which could be attributed to such a cause, at any time. No other evidence was offered, which in anywise tended to prove lewdness upon the part of the appellant previous to the marriage, except as stated above, and although it was averred in the petition that the wife's reputation for chastity was bad and previous to the marriage, no attempt was made to offer any evidence to that effect. Such evidence would, however, have been incompetent, if offered, as the previous reputation of the wife would not have constituted any ground for divorce, and her character upon that subject could not have been made an issue. Evans v. Evans, 93 Ky. 510. Section 2117, subsection 1, Kentucky Statutes, provides as a ground for divorce from the bonds of matrimony, the pregnancy of the wife by another man, without the husband's knowledge, at the time of the marriage, but it will be observed, that nowhere is incontinence of the wife previous to the marriage, made a ground of divorce by statute nor is the incontinence of the husband before marriage a ground of divorce in behalf of the

wife. Hence, a want of chastity by the wife preceding a marriage, although not divulged by her to the husband, at the time of the marriage, is not a fraud, which will vitiate the marriage, unless a rule upon that subject, other than such as applies to the husband, should be held to apply to the wife, which would be neither just nor in accordance with common sense. Our statute, subsection 5, of section 2117, *supra,* provides for the granting of a divorce *a vinculo matrimonii* to the party not in fault for fraud perpetrated in obtaining the marriage. There is no pretense, that the wife made any representations, as to her chastity, to the appellee to induce the marriage. The only charge is that she concealed her previous want of chastity from the appellee, and this rests, alone, upon the allegations in his petition to that effect and not upon any evidence. A fraud, which will vitiate and constitute a ground for divorce must be a matter essential to the validity of the marriage itself, and the concealment by the wife, from the prospective husband, that she had previously been guilty of fornication or adultery or had given birth to an illegitimate child, is not a fraud, that will constitute a ground for divorce or vitiate the marriage. The maxim that the husband and wife take each other ''for better, for worse'' applies as to such matters, as it does to so many other things, connected with a husband and wife. 14 Cyc, 595; Farr v. Farr, 2 MacArthur (D. C.) 35; Allen's Appeal, 44 A. S. R. 101;. Varney v. Varney, 52 Wis. 120; Hedden v. Hedden, 21 N. J. Eq. 61; Leavitt v. Leavitt, 13 Mich. 452; Smith v. Smith, 8 Oreg. 100. Section 2120, Ky. Stats., provides that ''Cohabitation as man and wife after a knowledge of adultery or lewdness complained of shall take away the right of divorce therefor.'' The appellee living in the same neighborhood with appellant and well acquainted with her and with knowledge of the birth of the child, which he now claims to have been illegitimate, was certainly sufficient notice to put him upon inquiry, when he sought the appellant to marry him and it can only be reasonably concluded, that, if what is now alleged against her was true, appellee determined to take his chances with her and condoned the previous offenses when he married her. Tilton v. Tilton, 16 R. 538, 14 Cyc. 636, Steele v. Steele, 96 Ky. 382; Hooe v. Hooe, 132 Ky. 590; Muir v. Muir, 28 R. 1355.

(b) Section 2116, *supra,* provides that the husband ''when not in like fault'' may obtain a divorce from the

wife, where she is guilty of habitual drunkenness of not less than one year duration. This, of course, is habitual drunkenness for the duration of one year, after the marriage relation has been established. The parties, in the instant case, only resided together for eight months after marriage and besides there is a total failure of proof to show anything like a habitual habit of drunkenness on the part of the wife. She is shown to have been intoxicated on two or three occasions, only, during the existence of the marriage relation and on one or two occasions, theretofore. However, if the proof should be sufficient to establish the fact that she was guilty of habitual drunkenness or the excessive use of intoxicating liquors to an extent, that could be considered habitual, there are two principles upon which, under the facts as proven, would deprive the appellee of the right to complain of his wife's habit in that regard. The one would be, that, whatever habit, she had in that respect, was known to appellee, at the time, he sought her in marriage and married her, for, wherever the complainant has knowledge, at the time the marriage, is contracted, of the cause of divorce, which he urges, it constitutes a bar to the suit. Tilton v. Tilton, *supra*. The undisputed evidence shows, that, for two or three months previous to the marriage and before she had obtained a divorce from her previous husband, the appellee, as a suitor, was visiting her at her father's house; that he would have liquors with him and on one occasion, at least, was intoxicated, and that after his visits to appellant were concluded, she would be intoxicated. It is observable, that, the appellee when testifying, when he was inquired of relative to his furnishing to his wife spirituous liquor, he confined his denial to the period during which they were living together. It would be neither just nor logical to allow appellee to complain of a habit of his wife of which he had knowledge at the time of the marriage. The statute only gives him a right to complain of the habit of drunkenness, upon the part of his wife, if he was not in like fault. An old colored man to whom he had given checks, which were returned endorsed by persons in neighboring towns, who were engaged in the sale of liquors, testified that during the time appellant and appellee lived together, that, he and appellee bought spirits jointly. A policeman, who was called in to exercise the duties of his office in preserving order in the house of ap-

pellee, gave testimony to the effect, that upon his arrival, the appellee was intoxicated and in bed, while his mother-in-law, although her character for morality is proven to be bad, testified that appellee bought liquors and had them in his house in defiance of her warning, that he should not do so. The wife is shown to have ordered and caused to be shipped to her three packages of liquors, of one-half gallon each, during the time, that she resided with the appellee, and he confesses to having furnished her the money to buy two of these packages, although he says they were bought with the purpose of being used as a medicine.

We do not know of any law which permits the husband to complain of his wife when he is in like fault with her.

(c) The proof offered to sustain the charge of adultery by the wife, during the existence of the marriage relation, related to the acts of the wife with two individuals. On one occasion, appellant, her daughter, sister and a young man accompanying the sister, were, at the "picture show," when Tib Hines came into the "show" and took a seat beside the appellant and engaged in conversation with her, but upon what subject the proof does not show. At the close of the "picture," Hines went out of the house and, shortly after, the appellant and the persons with her went out of the house. On another occasion appellant was standing at night in the doorway of a drug store, a very public place and well lighted, and Tib Hines was seen in conversation with her for a short time. On another occasion, she and Hines were seen to meet, in the daytime, in a public road or street in a public place, and apparently engaged in a conversation for a few moments. Some time after the institution of this suit, a witness testified to having seen Hines from the opposite side of the street standing at the front door of appellant's house, at about eleven o'clock in the evening, and to be standing there in front of the door, along by which the public street ran, as though knocking or intending to enter or to wait for some one to respond to his call. A witness testifies to having seen appellant, at the county fair, in the midst of the throng, walking in the direction of a "flying jenney," and directly he saw Tib Hines walking in the same direction, fifteen or twenty steps in the rear of appellant. It is unnecessary to say that the proof of the

above facts fails to prove anything to support the charge of adultery with Hines and would not ordinarily excite a suspicion. Suffice it to say, that a charge of lewdness can not be substantiated by a mere suspicion or the proof of circumstances harmless in themselves and not necessarily indicating anything culpable. Rogers v. Rogers, 15 R. 526; Bond v. Bond, 150 Ky. 389.

In the month of May or June, 1917, at a street fair, where a large number of persons were congregated, the appellant was present, when John Stone, her former husband, approached her in the crowd and there was an exchange of some words between them. Afterward, upon the same evening, appellant and a lady and gentleman went to the "movies," and while there, John Stone entered and took a seat and some conversation took place between him and appellant. One day during the week following the appellant, accompanied by her daughter, and also, by her husband, until within one-half or three-quarters of a mile of the place, paid her aunt a visit. The husband of her aunt was a brother of John Stone and Stone at certain times resided with his brother John Stone was at his brother's house on that morning, but went away before appellant and her daughter arrived, and did not return until the noon hour and just as the family was sitting down to the noon meal. He remained there until the appellant left for her home, which was about five o'clock p. m. He was called as a witness for appellee and testified that, at the street fair, he made an arrangement with the appellant, to meet him at his brother's on the day of her visit there, and about one o'clock p. m. on that day, she accompanied him to the stable, which was about fifty yards away, in plain view of the dwelling, with a window on the side of the house toward the stable, and in a stall at the stable he had sexual intercourse with her. The appellant's aunt and two of her children and appellant's daughter were at the house at that time or the children were playing about the dwelling. None of these parties knew of the visit to the stable by appellant and Stone, and the aunt deposes, that appellant was in the room with her, at all times, from the noon meal, until she left and that she could not possibly have visited the stable without her knowledge. The husband, Marion Stone, and two of his children were at their home from the noon meal, until about one o'clock p. m. A Mrs. Evans came to the house at about four

o'clock p. m., and testified to finding appellant, her aunt and John Stone in the house, engaged in talking before the fire. The appellant was under the influence of liquors and when she, accompanied by her daughter, the witness and her aunt, started to go to the country store nearby to meet appellee to return to her home, John Stone started to accompany them and was assisting the appellant along, when the aunt compelled John Stone to return to the house. The aunt and her husband testify, that there was a quantity of liquor at their home and appellant took a small quantity, at the noon hour, in their presence, but, they did not know, if she took any more of it. The aunt also denies that John Stone attempted to assist appellant along. John Stone does not testify to having had any liquors with him or to have given any to appellant. When he was testifying, it seems that he was to some extent under the influence of liquor, but refused to tell from whom he had received it. A few days after giving his deposition the appellant caused him to be subpoenaed for the purpose of further cross-examining him, and when the subpoena was executed upon him, instead of obeying it, he immediately left the state for Cincinnati and thereby avoided the further cross-examination. According to his statements, he seems to be a man without any particular place of abode. He does not state, that, he ever at any other time, before or since the time mentioned by him had sexual intercourse with appellant or sought to do so, since his separation from her. Witnesses, who testify to their own shame and degradation and especially those witnesses, who testify to unchaste acts with females have never been favorites of the courts of justice. Beatty v. Beatty, 151 Ky. 547; Anderson v. Anderson, 152 Ky. 773; Evans v. Evans, 93 Ky. 510. Such witnesses are invariably discredited and disbelieved in such cases, unless strongly corroborated. The common distrust of such witnesses and to protect wives and husbands from attempts to unjustly besmirch them, section 2119, Ky. Stats., was enacted, one of the provisions of which is, "Two witnesses or one and strong corroborating circumstances shall be necessary to sustain the charge of adultery or lewdness." No corroboration of the testimony of Stone, that, appellant committed adultery with him, appears in the record, but, instead thereof, he is strongly contradicted and the circumstances of his testimony and the fact that he left

the country to avoid a further cross-examination does not help to give assurance of the truth of his statements. Hence, the charge of adultery against appellant by her husband fails for want of proof, which the law requires to establish such an accusation and the circumstances are not such as would lead the guarded discretion of a reasonable and just man to conclude her guilty from his testimony alone, when contradicted, as it is, and the conduct of the witness.

(2.) (a) The promise of appellee to give appellant a dwelling house and two thousand dollars in money, relied upon by her in her counterclaim, does not present any cause for divorce. It does not constitute an enforcible contract, because of the provisions of subsection 5, of section 470, Ky. Stats. Further, it is neither alleged nor proved that the appellant accepted the offer and married the appellee in consideration of the promise, though, it is sufficiently proven, that, in his anxiety to be victorious over his rival, Tib Hines, he made the declaration, that in the event of appellant's marriage to him that he would bestow the house and money upon her, but in the absence of a statute authorizing it a breach of antenuptial agreement of that character, does not constitute a ground for a divorce. Owen v. Owen, 90 Iowa, 365.

(b) With reference to the other two grounds of divorce relied upon by appellant, in her counterclaim, the proof fails to show, that the husband did not furnish the wife with sufficient clothing or food, although he does not seem to have been very prodigal in bestowing many things upon her, as she continued her former occupation of working as a washerwoman for persons in order to secure money, presumably for necessary things she desired to have.

(c) Touching the charge of cruel and inhuman treatment of appellant by her husband, the evidence is very contradictory, as no one testifies upon that subject, except the husband and wife. She gave testimony to the effect, that, on several occasions, he cruelly beat her with his fists and was at the time under the influence of liquors, and that his temper was rough and unreasonable, and that on one occasion, when she went out to appeal to the police, he closed the door, so that she could not return, and when she attempted to return by crawling through the window, he seized and very severely choked her. His testimony upon the subject is that they engaged

in three fights, in one of which he did not resist, but in the other two that he struck appellant with his fists, though how many times and to what extent he does not say. In each of these difficulties, he deposes, that, the appellant first assaulted and struck him and that he was merely acting in his necessary self defense.

(d) An unfounded charge of adultery against a wife is cruel treatment and an evidence of a settled aversion to her. Trapp v. Trapp, 20 R. 335; Harl v. Harl, 24 R. 2163; Shrout v. Shrout, 12 R. 470. A false charge of adultery does not, however, constitute cruelty, unless made in bad faith and the absence of grounds for believing it. In this case, the charge was made by appellee, in the petition, that his wife had committed adultery with several men, whose names were unknown to him. If appellee then knew that his wife had committed adultery, it is very difficult to believe, that he did not know the names of the men with whom she had been guilty. Stone testifies, that he did not communicate his purpose to testify to having sexual intercourse with her, until a few days previous to his testifying. Hence, it appears, that, when appellee made the charge of adultery against his wife he did not have any evidence of it, but made it recklessly with the hope of thereafter being able to prove it by some one, who might thereafter be discovered. In several instances, it has been held by this court, that an unfounded charge of adultery could be considered, in connection with other acts of cruelty, in determining whether the husband had a settled aversion to the wife, evidenced by habitually treating her for six months in a cruel and inhuman manner, but in Kefauver v. Kefauver, 22 R. 386, it was held, that an unfounded charge of adultery could be considered only in determining whether the wife had shown a right to a divorce from bed and board, and that it was not such a ground as authorized a divorce *a vinculo matrimonii*. There is no evidence, that the husband ever made the charge of unchastity against the wife, until he abandoned her and concluded to institute his suit. All the facts as proven, including the abandonment by the husband and the charge of adultery and the result of his charge in the court below make it very apparent that it would be now impossible for appellant to reside with appellee, and having been divorced from the bonds of matrimony, of course, she could not do so. It is not necessary to decide whether,

under the facts of the case, she could sustain a cause of action for divorce from the bonds of matrimony, which might be said to be questionable, but there can be no doubt, that she was entitled to a divorce under the facts proven, from bed and board, instead of the judgment for divorce from the bonds of matrimony, which was granted to the husband, and hence her right to alimony necessarily follows.

(3) The evidence shows that the appellee has property of the value of at least five thousand dollars, and receives a pension of $36.00 per month and that the appellant is entirely destitute of property and dependent upon her daily labor for her support. As a general rule alimony is based upon the common law obligation of a husband to support a wife during his lifetime. The status of the marriage entitles the wife at the death of the husband to dower, equal to one-third in value of his real estate, for her lifetime, certain exemptions and one-half of the surplus of the personalty belonging to the deceased husband. A divorce from bed and board, granted to the wife, would only entitle her to alimony during the lifetime of the husband, because such divorce does not bar her of the dower or distributive share in the deceased husband's estate, but, in the instant case, a divorce from the bonds of matrimony having been granted the husband, the wife is thereby deprived of her right to dower or distributive share in the husband's estate, in the event of his death, and for such reason, the value of the dower that she would have otherwise received, will necessarily be taken into consideration in determining the sum to which she is entitled for alimony. There has been no hard and fast rule adopted, in this state, to determine the relative amount of alimony, which should be allowed a wife where she is entitled to a divorce from her husband, but, it is a matter within the sound discretion of the court, considering all the facts and circumstances and the relative obligations and liabilities of the parties. In this case, we are of the opinion, that the appellee should be required to pay to his wife alimony in the lump sum of one thousand dollars.

Therefore, the judgment, so far as it denies to the wife a claim for alimony, is reversed and the cause remanded for proceedings consistent with this opinion.