RAYMOND G. WETSTINE *vs.* HELEN HARTT WETSTINE.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued October 16th—decided December 8th, 1931.

*William S. Hyde,* for the appellant (plaintiff).

*William M. Harney,* for the appellee (defendant).

AVERY, J. This case was heard and judgment rendered January 28th, 1931, granting to the plaintiff a decree of divorce on the ground of fraudulent contract. Thereafter, March 17th, a motion was made by the de-

fendant to open the judgment, which motion was granted by the court April 23d; and judgment entered, dismissing the complaint.

From the finding of the court, it appears that the defendant, whose baptismal name was Helen Ciurkot, on January 12th, 1924, gave birth to an illegitimate child at Hartford; and, thereafter, she assumed the name of Helen Hope Hartt, the latter being the name of the father of the child. Thereafter, in January, 1927, under that name, she became acquainted with the plaintiff at the office of the company where they were both employed. Beginning in the summer of that year, the plaintiff kept company with the defendant and continued to do so up to the time of their marriage; and during all this time, he knew the defendant by the name of Helen Hope Hartt. In August, 1928, the parties had sexual intercourse with each other, and such acts continued until the night of October 31st, 1929. March 21st, 1929, the parties became engaged to be married. The plaintiff married the defendant under the name of Helen Hope Hartt July 8th, 1929, and they lived together as man and wife until November 2d, 1929, when he left her, and has not cohabited with her since.

Before the defendant met the plaintiff, she had traveled with a married man as his wife; and occupied, for six months, an apartment furnished by him; all of which was unknown to the plaintiff before the marriage. Late in 1928, he heard a rumor that the defendant's correct name was Helen Ciurkot, and that she was the mother of an illegitimate child. He then went to the Bureau of Vital Statistics, and secured a certified copy of the birth of Roberta Hartt, and showed this to the defendant. At that time, she told him she was not the person named therein as the mother of the child; that her name was not Helen

Ciurkot; and that she knew the mother of the child. Thereafter, in 1928, she introduced the plaintiff to another woman as being the "Helen Ciurkot" mentioned in the birth certificate, and the mother of the child, Roberta Hartt. In November of the same year, she went to Glasco, New York, to obtain a copy of her birth certificate. She refused to show this certificate to the plaintiff when requested to do so by him. Her reason for so refusing was to prevent him from learning her real name. April 30th, 1929, she made application to the Superior Court in Hartford County to have her name changed to Helen Hope Hartt, which application was granted May 3d, 1929. She concealed from the plaintiff the fact that she had changed her name, her reason for concealment being to prevent the plaintiff from finding out her real name. In June, 1929, she settled a bastardy claim against the father of the child. This fact she concealed from the plaintiff before the marriage. Before the marriage, the plaintiff asked her nationality; she told him that she was part French and part German; in point of fact, she was born of Polish parents. Before the marriage, she introduced the plaintiff to a man purporting to be her father, whose name was given to the plaintiff as Mr. Hartt. She also introduced him to a woman, purporting to be her mother, under the name of Mrs. Hartt. In her application for her marriage license, she stated that her age was twenty-four, when, in fact, it was twenty-nine. Her reason for making this misstatement was because she had previously told the plaintiff that she was twenty-four years of age. In her application for her marriage license, she gave her father's name as Frederick Hartt, while his real name was Andrew Ciurkot; her reason for so doing was to prevent the plaintiff from finding out her real name, and the truth about her parents.

The plaintiff did not learn that the defendant had settled her bastardy suit, had changed her name, and had given a wrong name in applying for her marriage certificate, until November 1st, 1929, the day before he left her. Before her marriage to the plaintiff, the defendant deliberately concealed from him her correct name, the birth of the child, her correct age, the settlement of the bastardy case, and the true facts concerning her nationality; all for the purpose of inducing the plaintiff to marry her, well knowing that if he had known these facts, he would never have done so.

In the latter part of September, 1929, the plaintiff consulted a clergyman with reference to a religious annulment of the marriage. At that time, he stated to the clergyman that he had learned, while they were on their honeymoon in July, 1929, that the defendant was the mother of an illegitimate child. Thereafter, the plaintiff and defendant lived together and occupied the same bed uninterruptedly up to and including the night of November 1st, 1929.

Upon these facts, the trial court concluded that the plaintiff, by living with the defendant as man and wife from July, when he discovered that she was the mother of an illegitimate child, had condoned the deception practiced upon him by her in that respect.

The plaintiff seeks to have the findings of the court corrected in the vital matter of the knowledge of the plaintiff, while on his honeymoon, of his wife's unchastity before marriage. Examination of the evidence certified in connection with the motion to correct the finding shows that the finding of the court is based upon testimony, and must stand. Not only did the wife herself testify that she informed the plaintiff of the fact in regard to the illegitimate child before the marriage, but the clergyman testified that when the

plaintiff called upon him subsequent to the marriage to consult with him with reference to an annulment, the plaintiff had informed him that his wife had told him of the illegitimate child while they were on their honeymoon. The trial court, believing this testimony, was amply justified in concluding that by living with the defendant as husband and wife for a period of approximately four months after learning of her prenuptial unchastity, the plaintiff condoned the same. *Delliber* v. *Delliber*, 9 Conn. 233, 234. The quotation from Chief Justice Parsons, *Anonymous*, 6 Mass. 146, 148, applies with particular force to the circumstances in this case: "If, therefore, a husband, believing his wife's guilt, will afterwards cohabit with her, whether influenced by his compassion or his affections, or induced by her tears, her penitence, or her fascinations, he cannot afterwards avail himself of that offense, to obtain a dissolution of the marriage. And he is bound by his remission, although he after may repent of his indulgence, from his subsequent reflections, or from the persuasions of his friends, or from the influence of what he may call the public opinion." By reason of his own prenuptial intimacy with the defendant, the plaintiff was aware of her unchastity, and is in no position to complain in that regard under the circumstances of this case. It would be neither just nor logical to allow the plaintiff to complain of a characteristic of his wife of which he had knowledge at the time of his marriage. *Wesley* v. *Wesley*, 181 Ky. 135, 204 S. W. 165, 168; *Seilheimer* v. *Seilheimer*, 40 N. J. Eq. 412, 413, 2 Atl. 376, 377. "He cannot say he was deceived, for he knew she was unchaste. He may say he did not know all, but he knew enough."

Any misrepresentations of the defendant as to her continence during her past life, and with regard to the birth of a child before she knew the plaintiff,

having been fully condoned by him, it is unnecessary to consider whether wilful misrepresentations in regard to such matters constitute fraudulent contract under the provisions of our statute. General Statutes, § 5174. Misrepresentations by the defendant as to her age, her name, and her nationality would not furnish a sufficient basis to dissolve a consummated marriage on that ground. *Benton* v. *Benton,* 1 Day 111, 113; *Guilford* v. *Oxford,* 9 Conn. 321, 327; *Gould* v. *Gould,* 78 Conn. 242, 261, 61 Atl. 604; *Lyman* v. *Lyman,* 90 Conn. 399, 402, 97 Atl. 312.

There is no error.

In this opinion the other judges concurred.