# Richmond

BESSIE C. INGRAM v. ARTHUR A. INGRAM.

November 21, 1938.

Record No. 1967.

Present, All the Justices.

The opinion states the case.

*Thomas I. Talley,* for the appellant.

*Arthur A. Ingram,* for the appellee.

EGGLESTON, J., delivered the opinion of the court.

On February 13, 1932, Bessie C. Ingram was granted a divorce from Arthur A. Ingram, with alimony. By a decree entered about three years later the allowance of alimony was slightly increased and fixed at $22.50 per month.

On March 5, 1936, Arthur A. Ingram, who had in the meantime remarried, filed a petition alleging that "recently" he had learned that his former wife had "committed adultery within recent years at various and sundry times and places with one Percy C. Wooters," and praying that on that account he be relieved from the payment of further alimony to her.

The husband took the depositions of himself and Wooters, the alleged paramour, in support of the allegations of the petition. Mrs. Ingram took the depositions of several witnesses, including herself, in refutation of the charges. Upon the reading of this evidence the lower court entered a decree relieving the husband from the payment of further alimony, and from this decree the present appeal has been taken.

Ingram's testimony contains no direct proof of his former wife's misconduct. The only evidence of the alleged adultery of Mrs. Ingram comes from the lips of her self-proclaimed paramour, Wooters. The question we are to decide is whether this uncorroborated story is sufficient to sustain the allegations of the petition.

There are decisions to the effect that one should not as a matter of law be found guilty of adultery on the uncorroborated testimony of a paramour. See Ann. Cas. 1913A, p. 1241, note.

However, there seems to be no conclusive reason why adultery may not be proved by the uncorroborated testimony of a paramour, provided he or she is a credible witness and the story worthy of belief. But the testimony of such

*particeps criminis* should be received and acted upon with great caution.*

This is the conclusion reached in *Letts* v. *Letts,* 79 N. J. Eq. 630, 639, 82 A. 845, Ann. Cas. 1913A, 1236, the leading case on the subject. See also, *Evans* v. *Evans,* 123 Okl. 9, 252 P. 837; 9 R. C. L., p. 332, section 111; 19 C. J., p. 141, section 364.

As was said in *Wesley* v. *Wesley,* 181 Ky. 135, 204 S. W. 165, "Witnesses who testify to their own shame and degradation, and especially those witnesses who testify to unchaste acts with females, have never been favorites of the courts of justice." In that State a charge of adultery can not be sustained by the uncorroborated testimony of a single witness. Ky. Stats., section 2119.

When the uncorroborated testimony of Wooters is weighed in the light of these principles, in our opinion it is entirely insufficient to sustain the allegations of the petition.

Wooters testified that he had been a friend of Mr. and Mrs. Ingram for about sixteen years; that his illicit relations with Mrs. Ingram began in October, 1928 (nearly four years before the divorce was granted), and continued until the summer of 1935; that during these years he visited Mrs. Ingram almost daily either at her home or where she worked, and frequently took her downtown in his automobile; that during this time he had committed adultery with her on "numerous occasions," or "whenever the occasion presented itself." And all the while, he said, he was married and living with his wife. It further appears that at the time he gave his deposition he was not employed, but was being supported by his wife, to whom, he brazenly admits, he was unfaithful.

Not a single witness was called to corroborate any part of this remarkable and degrading story. Apparently no

*The same rule applies in this State with reference to the testimony of an accomplice in criminal cases. *Faulkner* v. *Town of South Boston,* 139 Va. 569, 572, 123 S. E. 358; *Crosby* v. *Commonwealth,* 132 Va. 518, 520, 110 S. E. 270; *Hunt* v. *Commonwealth,* 126 Va. 815, 819, 101 S. E. 896.

one saw Wooters at any of these times either with Mrs. Ingram or going in and out of her home.

Wooters also testified vaguely of Mrs. Ingram's association with other men, but this amounts to nothing more than opportunities for or suspicion of misconduct.

Mrs. Ingram denies Wooters' story in whole and in detail. Furthermore, she testified that shortly before the present proceedings in the cause she had finally rejected Wooters' attentions and threatened to have him arrested if he came to her apartment again. Wooters admits that his relations with her then terminated.

It likewise appears from Wooters' own testimony that just about this time he had an interview with Ingram, who he knew was desirous of being relieved from the payment of alimony, and offered to testify of his misconduct with Mrs. Ingram for the sum of $100. He even discussed the matter with Ingram's attorney, who advised against this course. But that is not all. Wooters further testified that while he was negotiating with Ingram and the latter's attorney in regard to giving this testimony, he was advising Mrs. Ingram and her attorney of the progress of these negotiations. His excuse is that he hoped to entrap Ingram into offering him a bribe to tell the very story which he now asks the court to believe.

It thus appears from his own testimony, if it is to be believed, that he was false to his wife, false to his lover, and false to his friend, Ingram. Moreover, one of the most remarkable things about his story is the brazen and boastful manner in which it is told. It is almost inconceivable that one could be so shockingly devoid of honor, morals, and good conscience.

We have no hesitancy in saying that the trial court should have rejected the uncorroborated testimony of this witness as utterly incredible and unworthy of belief. See *Engleman* v. *Engleman*, 97 Va. 487, 493, 34 S. E. 50.

The decree appealed from will be reversed and a decree will be here entered dismissing the petition.

*Reversed.*