# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## HUNT V. COMMONWEALTH.

### January 22, 1920.

1. INTOXICATING LIQUORS—*Indictment and Information—Sufficiency of Count.*—A count in the indictment charged that the accused within one year next prior to the finding of the indictment "did unlawfully manufacture, transport, sell, keep, store and expose for sale, give away, dispense, solicit, advertise, and receive orders for ardent spirits, against the peace and dignity of the Conmonwealth of Virginia."

   *Held:* That the trial court did not err in overruling a demurrer to this count of the indictment.

2. INTOXICATING LIQUORS—*Indictment and Information—Bringing Liquor Into the State.*—A count in an indictment charged that accused within one year next prior to the finding of the indictment did unlawfully bring into this State from a point without this State, for use in this State, ardent spirits, against the peace and dignity of the Commonwealth of Virginia.

   *Held:* That as the count did not charge that the ardent spirits were transported in Interstate Commerce, it was good on demurrer.

3. WITNESSES—*Cross-Examination—Impeachment.*—The testimony for the Commonwealth had shown an intimate friendship and association existing between a witness and the accused and that, if the Commonwealth's witnesses were to be believed, the witness had perjured himself as to one subject about which he had testified. In the course of the cross-examination of the witness, the Commonwealth's attorney asked him if he would not "swear to anything in this case."

   *Held:* That it was not error in the trial court to refuse to direct the jury to disregard the question. The question addressed to the witness was, in effect, merely whether he would himself admit such turpitude. If he had admitted such turpitude such testimony would have been admissible, "as it went to lessen the weight of his testimony."

4. WITNESSES—*Impeachment—Questions in Regard to Personal Conduct of Witness.*—The general rule is that a witness can-

not be impeached by questions with regard to his personal conduct which are not relevant to the case on trial. 'In such case only evidence of the bad general reputation of the witness for truth and veracity is admissible to impeach his credibility. But "where the question is relevant or material to the matter on trial the witness must answer, however much it disgraces or discredits the character, because the demands of public justice require this."

5. ACCOMPLICES AND ACCESSORIES—*Conviction Upon Uncorroborated Testimony—Instructions.*—Where the court instructed the jury that they might, if they thought it proper to do so, convict the accused upon the uncorroborated testimony of an accomplice, but nevertheless the evidence of an accomplice must be received with great caution, and that if two or more accomplices are produced as witnesses they are not deemed to corroborate each other, it was held not error to refuse to further instruct the jury that, "the source of such evidence is tainted, and the danger of collusion between the accomplices and the temptation to exculpate themselves by fixing the responsibility upon others is so strong that it is the duty of the court to warn the jury against the danger of convicting the accused upon their uncorroborated testimony."

6. ACCOMPLICES AND ACCESSORIES—*Conviction Upon Uncorroborated Testimony—Instructions.*—The instruction as given in the preceding syllabus was as favorable to the accused in its statement upon the subject dealt with as he could ask. The quoted language was objectionable because it needlessly elaborated the rule fully stated by the instruction as given, by entering upon a statement of the reasons for such rule, which statement was likely to mislead the jury into concluding that the court thereby expressed an opinion that the testimoney referred to was in fact "tainted" and was in fact "uncorroborated" in any particular; whereas it was for the jury to decide whether the testimony in question was "tainted," and there was evidence in the case corroborating the testimony in question in some particulars.

7. INTOXICATING LIQUORS—*Interstate Commerce—Reed-Jones Act.*—The act of Congress of March 3, 1917 (39 U. S. St. at L. 1058-1069; U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, sec. 8739a) called the "Reed-Jones Amendment," prohibiting the transportation of intoxicating liquors in interstate commerce except for scientific, sacramental, medicinal and mechanical purposes, into any State the laws of which prohibit the manufacture or sale therein of intoxicating liquors for beverage purposes, is inapplicable to a case where

there was no charge in the indictment and no evidence in the case that the liquor in question was not transported into the State for the purposes mentioned and expressly permitted by the federal statute.

8. INTOXICATING LIQUORS—*Indictment and Information.*—An indictment charged that accused "in said city of Norfolk, within one year next prior to the finding of this indictment in the said city of Norfolk, did unlawfully transport from one point to another in this State, ardent spirits, against the peace and dignity of the Commonwealth of Virginia." The indictment was objected to on the ground that it might still be true and the defendant not necessarily guilty of any violation of the law, and also because it did not definitely charge the transportation to have occurred from one point in the State to a point in the city of Norfolk.

*Held:* That there was no merit in these objections to the indictment.

Error to a judgment of the Corporation Court of city of Norfolk.

*Affirmed.*

The indictment in this case was as follows:

"The grand jurors of the Commonwealth of Virginia, in and for the body of the city of Norfolk, and now attending the said court at its August term, 1918, upon their oaths, present that Arthur L. Hunt, within one year next prior to the finding of this indictment, in the said city of Norfolk, did unlawfully manufacture, transport, sell, keep, store and expose for sale, give away, dispense, solicit, advertise, and receive orders for ardent spirits, against the peace and dignity of the Commonwealth of Virginia;

"And the grand jurors aforesaid, upon their oaths aforesaid, do further present that the said Arthur L. Hunt, within one year, next prior to the finding of this indictment, in the said city of Norfolk, did unlawfully transport from one point to another in this State ardent spirits, against the peace and dignity of the Commonwealth of Virginia;

103

"And the grand jurors aforesaid, upon their oaths aforesaid, do further present that the said Arthur L. Hunt within one year next prior to the finding of this indictment, in the said city of Norfolk, did unlawfully bring into this State, from a point without this State, for use in this State, ardent spirits against the peace and dignity of the Commonwealth of Virginia."

There was a demurrer to the indictment and to each count thereof which was overruled.

There was a trial by jury resulting in a verdict which was as follows: "We, the jury, find the accused guilty as charged in the indictment and fix his punishment at two hundred and fifty dollars fine and three months in jail." There was a judgment of the court in accordance with such verdict.

There is direct conflict of testimony in the case but as the evidence must be regarded by us the material facts are as follows:

The accused was guilty of unlawfully bringing at one time into this State, to-wit, to the city of Norfolk, from a point without the State, to-wit, from the city of Washington, D. C., ardent spirits in excess of one quart, by means of a common carrier, to-wit, by bringing it with him in sample cases on a steamship plying between Washington, D. C., and Norfok, Va.

The accused was also guilty of unlawfully transporting said ardent spirits at one time from one point to another in this State, to-wit, from the steamship after its arrival at the wharf, which was its landing place in Norfolk, to another point within such city, to-wit, to the place of the seizure of the ardent spirits as they were being carried ashore from the steamship, the latter place being on said wharf a short distance from the steamship.

Two witnesses for the Commonwealth, on whose testimony the Commonwealth in large part had to reply to

prove the above stated facts, were themselves under indictment for the same offenses as those aforesaid, but had not been tried therefor at the time they testified in the instant case.

The accused asked the trial court to give the following instructions to the jury which we will designate as (4).

(4) "The court instructs the jury that while the rule of decision in this jurisdiction is that the jury, as triers of fact, may, if they see proper to do so, convict the accused upon the uncorroberated testimony of an accomplice alone, nevertheless the principle is well settled that the evidence of an accomplice must be received and acted upon by jury with great caution. *The source of such evidence is tainted, and the danger of collusion between the accomplices, and the temptation to exculpate themselves by fixing the responsibility upon others is so strong that it is the duty of the court to warn the jury against the danger of convicting the accused upon their uncorroborated testimony;* and the jury are further instructed that if two or more accomplices are produced as witnesses, they are not deemed to corroborate each other, but the same rule is applied, and the same corroboration is required as if they were but one." (Italics supplied.)

The court omitted the language which we have italicized and gave the remainder of such instruction as asked. This action of the trial court is made the basis of an assignment of error.

The Commonwealth introduced testimony which as it must be considered by us established the facts that one, Hosier, a witness for the accused, who had formerly sold liquor in Baltimore, Philadelphia and other places, was an intimate associate friend of the accused; that Hosier was at the aforesaid landing place of the steamship when it arrived as aforesaid; that the accused was seen by Hosier

to take a bottle out of his pocket, which was a half pint dark brown bottle similar to those found in the sample cases aforesaid, and threw it overboard (over the side of the steamship), after the accused was arrested and while he was talking to Hosier whom he had immediately called for on being arrested and yet Hosier testified that the bottle thus thrown away by the accused was not that character of bottle, but a flint bottle, an eight ounce vial, such as the accused testified that it was and which the accused testified had contained a cough mixture but was empty at the time, but as to which Hosier said the accused took the bottle out of his pocket and took a drink from it and then threw it away.

In the course of the cross-examination of Hosier the Commonwealth's attorney asked this witness the following question:

"Q. You will swear to anything in this case, will you not?"

To this question the counsel for the accused objected and the witness made no answer. The trial court refused to direct the jury to disregard such question. This action of the court is made the basis of another assignment of error.

Other assignments of error raise the other questions which are dealt with in the opinion below.

*Daniel Coleman,* for the plaintiff in error.

*Jno. R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General,* and *Leon M. Bazile,* for the Commonwealth.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court.

The questions raised by the assignments of error will be disposed of in their order as stated below.

[1]   1. Was there error in the action of the trial court in overruling the demurrer to the first count of the indictment?

This question is ruled by the decison of this court in *Pine & Scott* v. *Commonwealth,* 121 Va. 812, 93 S. E. 652, and must be answered in the negative.

[2]   2. Was there error in the action of the trial court in overruling the demurrer to the third count of the indictment?

This count does not charge that the ardent spirits were transported in interstate commerce, and, for the reason assigned in the opinion of this court in *Sickel* v. *Commonwealth,* 124 Va. 821, 99 S. E. 678, for the holding therein, this count was good on demurrer. We are of opinion that this count is good on demurrer for other reasons also, which are indicated in discussing question 5 in the opinion below. Hence the question under consideration must be answered in the negative.

[3]   3. Was it error in the trial court to refuse to direct the jury to disregard the question addressed to the witness Hosier on cross-examination of him by the Commonwealth's attorney, which is set forth in the statement preceding this opinion?

The question just stated must be answered in the negative.

The veracity of the witness had been directly impeached by the testimony for the Commonwealth in conflict with which this witness had testified with regard to the bottle episode, as set forth in the statement preceding this opinion. There was sufficient evidence thus presented before the jury to submit the question to them of whether this witness "would swear to anything in this case." The question addressed to the witness was, in effect, merely whether

he would himself admit such turpitude. If he had admitted such turpitude such testimony would have been admissible "as it went to lessen the weight of his testimony." *Newhal* v. *Wadhams*, 1 Root (Conn.) 504.

[4] It is true that the general rule is that a witness cannot be impeached by questions with regard to his personal conduct which is not relevant to the case on trial. In such case only evidence of the bad general reputation of the witness for truth and veracity is admissible to impeach his credibility. *State* v. *Hill*, 52 W. Va. 296, 43 S. E. 160, at p. 161, and authorities there cited. But "where the question is relevant or material to the matter on trial the witness must answer, however much it disgraces or discredits the character, because the demands of public justice require it." See the same case last cited, 52 W. Va. at p. 298, 43 S. E. at p. 160. The question under consideration was asked the witness Hosier as a part of the cross-examination of him on the subject of the bottle episode aforesaid, which was relevant to the case on trial. The testimony for the Commonwealth had shown the intimate friendship and association existing between the witness and the accused and that, if the Commonwealth's witnesses were to be believed, the witness had perjured himself as to one subject about which he had testified, and the further enquiry of whether he would admit that he would "swear to anything in the case" was relevant to the case on trial.

The cases of *Green* v. *Commonwealth*, 122 Va. 862, 94 S. E. 940; *Jessie's Case*, 112 Va. 887, 71 S. E. 612, and *Mullen's Case*, 113 Va. 787, 75 S. E. 193, relied on for the accused upon the question under consideration are not at all similar in their facts to the one now before us. In those cases the Comonwealth's attorney made statements or took positions in argument before the jury which there was no evidence whatever in the case to support. In the

case before us the conflict in the testimony above alluded to on the subject of the bottle was ample to have justified an argument before the jury to the same effect as the imputation involved in the question under consideration.

[5, 6]    4. Was there error in the action of the trial court in omitting the language which it italicized in the instruction offered by the accused and in giving the remainder of the instruction as asked, all of which appears from the copy of such instruction and from what is said in regard to it in the statement preceding this opinion?

This question must be answered in the negative.

The instruction as given is certainly as favorable to the accused in its statement upon the subject dealt with as he could ask.  We cannot here consider whether it was too favorable to the accused.  The omitted language was objectionable because it needlessly elaborated the rule laid down, fully stated by the instruction as given, by entering upon a statement of the reasons for such rule; which statement was likely to mislead the jury into concluding that the court thereby expressed an opinion that the testimony referred to was in fact "tainted" and was in fact "uncorroborated" in any particular; whereas, it was for the jury to decide whether the testimony in question was "tainted," and there was evidence in the case corroborating the testimony in question in some particulars.

[7] 5. (a) Is the act of Congress of the United States, approved March 3, 1917 (39 U. S. Stat. 1058-9), (effective July 1, 1917), generally called the "Reed-Jones Amendment," applicable to the instant case, and if so, (b), is the effect of it such that it has taken away from the State of Virginia the power to furnish a person found guilty of the offense created by the State statute of transporting or bringing into this State from a point without the State ardent spirits, in a quantity in excess of one quart within a period of thirty days?  (Acts 1916, sec. 39, pp. 237-8).

The Reed-Jones amendment aforesaid, as far as material, reads as follows:

" * * whosoever shall order, purchase, or cause intoxicating liquors to be transported in interstate commerce except for scientific, sacramental, medicinal and mechanical purposes, into any State or territory the laws of which State or territory prohibit the manufacture or sale therein of intoxicating liquors for beverage purposes, shall be punished as aforesaid" (a fine of not more than $1,000.00 *or* imprisonment for not more than six months, *or* both) ; "Provided, that nothing herein shall authorize the shipment of liquor into any State contrary to the laws of such State: * * ." U. S. Comp. St. 1918, U. S. Comp. Ann. St. Supp. 1919, § 8739a.

In the case of *U. S.* v. *Dan Hill,* decided January 13, 1919, 248 U. S. 420, 39 Sup. Ct. 143, 63 L. Ed. 337, relied on for the accused in the instant case, the indictment charged that Hill having upon his person one quart of intoxicating liquor intended for his personal use as a beverage, did in the State of Kentucky, get on board a certain trolley car being operated by a common carrier "engaged in interstate commerce and by means thereof did cause himself and the said intoxicating liquor, then upon his person, to be carried and transported in interstate commerce into the State of West Virginia," in violation of the Reed-Jones amendment aforesaid. The indictment also charged that the intoxicating liquor was not ordered, purchased or caused to be transported for scientific, sacramental, medicinal or mechanical purposes. There was a demurrer to and a motion to quash the indictment, which motions were sustained by the trial court. That ruling was reversed by the Supreme Court on the appeal.

The law of West Virginia in force at the time the *Dan Hill Case* arose permitted any person to bring into the State liquor in a quantity not in excess of one quart in

any period of thirty days for personal use, and the question involved was whether the Reed-Jones amendment had the effect of creating a Federal offense of the action of Hill of causing such quantity of liquor to be transported in interstate commerce into the State for such use notwithstanding that such action of Hill was *not* an offense under the State law. The Supreme Court held that the Reed-Jones amendment did have such effect and that said action of Hill was a Federal offense under the Federal statute aforesaid.

Inasmuch as the evidence on the trial of the instant case discloses that the accused caused the liquor to be transported by a common carrier engaged in interstate commerce, in that particular the case before us falls directly under the holding of the Dan Hill Case and we must hold that the accused did "cause intoxicating liquors to be transported in interstate commerce," but it does not follow from that single circumstance that the Federal statute in question is applicable in the instant case.

It will be observed that the indictment in the *Dan Hill Case* not only charged that the liquor was transported in interstate commerce for the personal use of Hill "as a beverage," but that it was *not* transported "for scientific, sacramental, medicinal or mechanical purposes." The demurrer to the indictment admitted the truth of the latter as well as of the former charges.

In the instant case the following instructions, (not quoted in the statement preceding this opinion) was given to the jury:

(1) "The court instructs the jury that if they believe from the evidence beyond a reasonable doubt that the accused brought from Washington to Norfok ardent spirits in excess of one quart they should find him guilty and fix his punishment at confinement in jail not less than one month nor more than six months, and by a fine not less

104

than $50.00 nor more than $500.00. It is not necessary for the State to show any intent to sell the same."

It will be seen from a reading of this instruction that it withdrew from the jury all consideration of the question of the purpose or purposes for which the liquor was transported into the State. If it was transported into the State "for scientific, sacramental, medicinal or mechanical purposes" the Reed-Jones amendment, by its express terms, in the body of the act itself, had no application to the case. And not only is there no charge in the indictment in the instant case on that subject, but there is no evidence whatever in the case on such subject. So far as the evidence discloses the liquor in question in the instant case may have been transported into this State for the purposes mentioned and expressly permitted by the Federal statute. No issue or enquiry has been made in the case before us on the subject. If the indictment had contained the charges on such subject of the indictment in the *Dan Hill Case,* the accused might have been able to introduce evidence on the trial which might have shown that the liquor was transported for some one of the purposes permitted by the Federal statute. Such transportation would not have been an offense under the Federal statute, but, the liquor being in excess of one quart, the transportation was an offense under the Virginia statute.

Hence, we cannot say from the evidence on the trial, and the conviction of the accused of an offense against the State statute, any more than we can on the demurrer to the indictment charging only an offense against the State statute. that the action of which the accused was guilty constituted an offense under the Federal statute aforesaid. So far as appears from the record before us the Reed-Jones amendment is not applicable to the case before us.

The first branch, (a), of the question under considera-

tion must, therefore, be answered in the negative. Consequenty the second branch, (b), of such question does not arise in the case and we shall for that reason not deal with it here. We do not wish to be understood, however, as intimating in any way what would be our opinion on such question.

[8]   6. What is said above disposes of all the assignments of error save that made to the action of the court below in overruling the demurrer to the second count of the indictment. It was stated in oral argument before us that that assignment of error was not insisted upon, so that it need not be further mentioned than to say that we are of opinion that it is without merit.

The case will be affirmed.

*Affirmed.*