## Richmond

AUBREY G. WRIGHT v. COMMONWEALTH OF VIRGINIA.

June 21, 1954.

Record No. 4228.

Present, Hudgins, C.J., and Eggleston, Spratley, Buchanan, Smith and Whittle, JJ.

The opinion states the case.

*Lucian H. Shrader* and *Harold B. Singleton,* for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General* and *Thomas M. Miller, Assistant Attorney General,* for the Commonwealth.

SMITH, J., delivered the opinion of the court.

The defendant, Aubrey Wright, was indicted for unlawfully and feloniously stealing, taking and carrying away on March 8, 1953, $590.00 in money, "being the lawful money and currency of the United States of America, * * * and property of one John W. Pick." Upon his trial he pleaded not guilty but the jury returned a verdict finding him guilty of grand larceny as charged in the indictment, and fixed his punishment at one year in the penitentiary. A motion to set aside the verdict on the grounds that it was "contrary to the law and evidence and without evidence to support it," was overruled and judgment was entered according to the verdict, to which judgment we granted this writ of error.

The defendant was proceeded against under Code, § 18-169, which provides that, "if any person buy or receive from another person, or aid in concealing, any stolen goods or other thing, knowing the same to have been stolen, he shall be deemed guilty of larceny thereof, and may be proceeded against, although the principal offender be not convicted." Since an offence against this statute is made larceny, without specifying either the punishment or the degree of larceny, the statute must be read in connection with Code, § 18-164, the applicable part of which provides that if any person steal from the person of another anything of the value of five dollars or more; or steals from another, but not from his person, anything of the value of fifty dollars or more, he shall be deemed guilty of grand larceny and be con-

fined in the penitentiary not less than one nor more than ten years.

The sole question for our determination is whether the evidence upon which the defendant was convicted is sufficient to establish his guilt beyond a reasonable doubt. It will therefore be necessary to recite the evidence at some length.

On March 7, 1953, John W. Pick, the victim of the larceny, went to Burnett's place, located on an alley back of Seventh and Main streets in Lynchburg, Virginia, for the purpose of gambling. About 2:00 o'clock the next morning, Pick left Burnett's in the company of Robert Almond, and after stopping briefly at a cafe the two went to the Texas Tavern where they met Estelle Creasy, a married woman separated from her husband and living clandestinely with the defendant. At that time Pick, who had been successful at gambling, had on his person approximately $1048.00, which he displayed there in the sight of Estelle Creasy and Almond. An employee of the Texas Tavern was impressed with the size of the roll of money and remarked, "you got a powerful big roll of bills there, John." After a short stay at the Tavern, Almond suggested that he, Estelle Creasy and Pick go to the defendant's apartment at 610 Court street, three or four blocks from the Tavern, where Estelle Creasy and the defendant were living together. Pick agreed to go if the defendant's permission was secured. Almond secured this permission from the defendant, who was at that time gambling at Partlow's place, a gambling house near Seventh street. The three rode to the apartment in a taxi, the fare being paid by Pick who also paid for a pint of whiskey purchased en route by Almond.

Upon entering the apartment, Estelle Creasy changed her dress to lounging pajamas and she and Almond then began to drink; however, Pick did not drink any of the whiskey but lay down on a bed, went to sleep and did not awake until eight o'clock. Almond testified that while he and Estelle Creasy were drinking and Pick was asleep, "she

asked me did I want any money. I said yes, so she went in and got the money and come back and I counted off $430.00 and put it in my pocket and she took the balance of the money, then we left 610 Court street and went back to the Texas Tavern. I went up in the alley and got Aubrey [defendant]."

After Almond told the defendant that he and the woman had "rolled Pick," the defendant, the woman and Almond went in the defendant's automobile to the apartment at 610 Court street. While the defendant and Almond waited in the car, Estelle Creasy went into the apartment and got some of her and the defendant's clothes and their bags. Almond testified that when the woman returned she gave the defendant the "same money" she took from Pick, except for the $430.00 she had given him. The defendant then drove from the apartment to the Arlington Hotel in Lynchburg, and after personally registering the three under fictitious names, he returned to Partlow's place and continued to gamble. Almond and Estelle Creasy were later that day apprehended at the hotel, at which time $430.00 was recovered from Almond, which he admitted was stolen from Pick; however, it does not appear that any money was recovered from the woman.

Pick testified that when he awoke at 8:00 a. m., he was alone; all of his money except sixteen cents was missing; the door to the apartment was open and all the clothes and bags that were in the apartment when he went to sleep were gone. Thereafter, he went to Partlow's place on two occasions and at both times he asked the defendant if he had seen Estelle Creasy and Almond or knew where they were. Each time the defendant denied that he had seen either of them or knew where they were. Pick further testified that when he went to Partlow's place the second time, he told the defendant that he intended to swear out a warrant against Almond and the woman for stealing his money and that the defendant replied, "For God's sake, don't do that. You can take any amount of this [referring to a large

amount of money he was holding in his hand] you want."

The two city policemen who investigated Pick's complaint testified that when they found the defendant at Partlow's gambling place on the morning of March 8, 1953, he had a $75.00 check and approximately $200.00 in cash; that he denied knowing the whereabouts of Estelle Creasy or Almond, and that he told them he had been gambling at Partlow's all night except for five minutes it took him to move his car from the Texas Tavern to the alley where he was gambling. Around one o'clock of the same morning and before going to his apartment with Almond and the woman, the defendant borrowed $40.00, which he repaid before five thirty; and then between six and six thirty he cashed a $75.00 check for a third party. This was the $75.00 check found on his person by the two investgating policemen.

The defendant testified that he had been unemployed since the middle of February 1953. He not only denied telling the police that he did not know the whereabouts of Estelle Creasy and Almond but he denied having been asked about them by the police. Even in reciting his record of several felony convictions, in addition to his conviction for having threatened to kill a Commonwealth's witness in the instant case, he showed a lack of frankness.

Estelle Creasy testified in behalf of the defendant and denied that she took or received any of Pick's money. She admitted, however, that she knew Pick had a large roll of money.

The trial court fully and correctly instructed the jury on the applicable law, to which instructions there were no objections. The jury was instructed that if any person receive from another person, or aid in concealing, any stolen money, knowing the same to have been stolen, he shall be deemed guilty of larceny thereof, and that under the indictment their verdict should be either guilty of grand larceny or not guilty. In order to support defendant's conviction of grand larceny, the evidence must show beyond a reasonable

doubt that he: (1) received fifty or more dollars of stolen money from another, or aided in concealing such amount of stolen money, (2) knowing the same to be stolen, and (3) so received or aided in concealing such stolen amount of money with a dishonest intent. *Gilland* v. *Commonwealth*, 184 Va. 223, 35 S. E. (2d) 130; *Longman* v. *Commonwealth*, 167 Va. 461, 188 S. E. 144; *Hey* v. *Commonwealth*, 32 Gratt. (73 Va.) 946, 34 Am. Rep. 799.

When the question raised on appeal is whether the trial court erred in overruling a motion to set aside the verdict of a jury as contrary to the evidence or without evidence to support it, this court will affirm the judgment entered on the verdict, unless "it appears from the evidence that such judgment is plainly wrong or without evidence to support it." Code, § 8-491. We review the evidence not with respect to what action we might have taken as members of the jury, but as to whether the evidence justified the jury, as reasonable men, in finding the defendant guilty. It is our duty to discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom. When such evidence leads to the conclusion of guilt beyond a reasonable doubt and excludes every reasonable hypothesis of innocence it is sufficient to support a verdict of guilty. *Toler* v. *Commonwealth*, 188 Va. 774, 51 S. E. (2d) 210; *Massie* v. *Commonwealth*, 140 Va. 557, 125 S. E. 146.

It is a well settled general rule that whatever may be established by direct evidence in a criminal case may also be established by circumstantial evidence. While such evidence should be received with caution, it is legal and competent and entitled to the same weight as direct testimony if it is of such convincing character as to exclude every reasonable hypothesis other than that the accused is guilty. *Toler* and *Gilland* cases, *supra*; *Abdell* v. *Commonwealth*, 173 Va. 458, 2 S. E. (2d) 293; *Clarke* v. *Commonwealth*, 159 Va. 908, 166 S. E. 541; *Langford* v. *Commonwealth*, 154 Va. 879,

153 S. E. 821; *Johnson* v. *Commonwealth*, 152 Va. 973, 146 S. E. 260.

Does the Commonwealth's evidence, tested by these rules, supply an adequate basis for the verdict of the jury finding defendant guilty of grand larceny? The defendant contends that it does not because Almond's evidence is "highly incredible" and that in any event "Almond is an accomplice" whose "evidence must be received with great caution." He further asserts that he ·can not be convicted of grand larceny because "the Commonwealth has not proved beyond a reasonable doubt the value of the money taken or the amount of money taken."

The testimony of Almond, an admitted thief, is not incredible but is supported by corroborative circumstances; it merely presents a conflict in the evidence, all of which has been weighed and acted upon by the jury. Furthermore, even if Almond be an accomplice, the defendant was not prejudiced, for the jury was instructed at the instance of the defendant to receive the testimony of an accomplice "with great caution." It is the general rule that the fact that a Commonwealth's witness is an accomplice may affect his credibility, but not his competency; he is a legal witness and the jury may determine what credit his testimony is entitled to, whether corroborated or uncorroborated. *Hunt* v. *Commonwealth*, 126 Va. 815, 101 S. E. 896; *Jones* v. *Commonwealth*, 111 Va. 862, 69 S. E. 953. We have often held that if the jury be satisfied of the guilt of an accused, it may convict him upon the uncorroborated testimony of an accomplice; but that such evidence should be accepted and acted upon with great caution. *Lane* v. *Commonwealth*, 184 Va. 603, 35 S. E. (2d) 749; *Watkins* v. *Commonwealth*, 174 Va. 518, 6 S. E. (2d) 670; *Guthrie* v. *Commonwealth*, 171 Va. 461, 198 S. E. 481.

We turn now to the defendant's contention that the evidence fails to show the specific amount of money retained by Estelle Creasy and received by the defendant from her. This issue was not raised during the trial when there

was a motion to strike the evidence which was argued at length, nor was the issue raised when the court with the approval of the defendant instructed the jury only as to grand larceny, but was first raised after verdict.

At common law the value of the article stolen must be alleged and proved. *Adams* v. *Commonwealth*, 23 Gratt. (64 Va.) 949. See 32 Am. Jur., Larceny, § 110, p. 1022. Proof that an article has some value is sufficient to warrant a conviction of petit larceny, but where the value of the thing stolen determines the grade of the offense, the value must be alleged and the Commonwealth must prove the value to be the statutory amount. *Adams case, supra*; 32 Am. Jur., Larceny, § 139, p. 1051; 52 C. J. S., Larceny, § 97, p. 912. See *Alexander* v. *Commonwealth*, 90 Va. 809, 20 S. E. 782.

The indictment here properly charged grand larceny in that it alleged the money stolen to be $590.00. Since money was the subject of the larceny its face value is its value. Code, §§ 18-166, 18-167; *Whalen* v. *Commonwealth*, 90 Va. 544, 19 S. E. 182.

It is true as contended by the defendant that neither the exact number of dollars stolen from Pick nor the exact number of dollars received by the defendant was proven by positive evidence. There was, however, positive evidence that approximately $1030.00 was stolen from Pick at the apartment; that when Almond was arrested at the hotel he had $430.00 which he admitted was stolen from Pick; that Almond told the defendant he and the woman had "rolled" Pick and that the money she thereafter gave the defendant was the "same money" which was stolen from Pick, except for the $430.00 received by Almond. The "same money" can only refer to the difference between $1030 and $430.00, which, as a matter of simple arithmetic, is in excess of the statutory amount of $50.00. Added to this evidence is the defendant's own evasive and contradictory testimony; his aiding in concealing Estelle Creasy and Almond by personally registering them in a hotel under fictitious names; his untrue

statements to the police and Pick; and the fact that within a few hours he borrowed $40.00, paid it back and then had $275.00 in his possession when first questioned by the police. The jury was warranted in finding that the defendant received from Estelle Creasy more than fifty dollars knowing it to have been stolen, and also aided in concealing $430.00 stolen money in Almond's possession.

Under the facts accepted by the jury we are unable to say that the judgment entered on the verdict is plainly wrong or without evidence to support it, and therefore the judgment is affirmed.

*Affirmed.*