Leroy ROBINSON, Jr., Petitioner,

v.

Carolyn CROSS, Warden, Respondent.

No. Civ.A. 99–1378–AM.

United States District Court,
E.D. Virginia,
Alexandria Division.

Nov. 8, 2000.

Leroy Robinson, Jr., Mitchells, VA, pro se.

Donald Eldridge Jeffrey, III, Office of the Attorney General, Criminal Litigation Section, Richmond, VA, for respondent.

## MEMORANDUM OPINION

ELLIS, District Judge.

This *pro se* petition, brought pursuant to 28 U.S.C. § 2254, presents the question whether petitioner's due process rights were violated when, in a grand larceny prosecution, the trial court overruled petitioner's hearsay objection and admitted the price tags on the stolen coats as evidence of the coats' value.

### I.

Petitioner Leroy Robinson was convicted of grand larceny in the Circuit Court of Henrico County on August 14, 1997.[1] This conviction rested on eyewitness testimony by security employees that petitioner stole three sport coats from Hecht's Department Store. Over a hearsay objection, these witnesses relied on price tags affixed to the stolen coats to testify that the value of the coats was $499.97.[2] This testimony was important because Virginia law defines grand larceny as the theft of goods or chattels valued at $200.00 or more. *See* Va.Code § 18.2–95(ii) (1950).

Robinson appealed his conviction to the Court of Appeals of Virginia, arguing that the trial court erred in admitting testimony based on the price tags. Specifically, he argued that the tags were hearsay and that testimony about the tags was double hearsay. The Court of Appeals rejected this argument and affirmed his conviction. *See Robinson v. Commonwealth*, 258 Va. 3, 516 S.E.2d 475, 476 (1999). Robinson then appealed to the Supreme Court of Virginia, which also affirmed his conviction in a 5–2 decision. In reaching this result, the majority opinion noted (i) that the hearsay question was one of first impression in Virginia and (ii) that information on a price tag was hearsay and did not fall into any of the exceptions to the hearsay rule then recognized in Virginia. *See id.* at 478. The majority then went on to canvass authority from other jurisdictions, concluding from this that price tags were commonly accepted indicators of value and therefore could be considered prima facie evidence of an item's value. Despite this conclusion, the majority held that price tags were forms of hearsay, but could be admitted under a newly-created exception to the hearsay rule. The justices noted, however, that a defendant was entitled to attack this evidence through cross examination or to rebut it by adducing other evidence.

---

1. Robinson was also convicted of malicious wounding, but does not challenge that conviction.

2. It is unclear why the prosecutor did not seek to prove the value of the stolen coats by more conventional and well-settled means, including (i) producing witnesses to lay a foundation for the admission of the tags as business records pursuant to Rule 803(b), Fed. R.Evid., (ii) producing witnesses such as sales clerks with knowledge of the coats' prices or whose recollection of such prices could be refreshed by viewing the tags, or (iii) producing an appropriate expert.

*See id.* at 479. The two dissenting justices argued that, because the Commonwealth had the burden of proving the value of the coats beyond a reasonable doubt,[3] requiring a defendant to show that the actual prices were lower than the amounts shown on the price tags impermissibly shifted the burden of proof to the defendant. *See id.*

Following this decision, Robinson filed a petition for rehearing, challenging the creation of the new hearsay exception, and its application to his case. This petition was denied, following which Robinson filed this 28 U.S.C. § 2254 petition, raising two claims:

1. The trial court erred in admitting the hearsay testimony of store employees concerning the price listed on the store tag to prove value; and

2. The retroactive application of the newly-created price tag exception to the hearsay rule to petitioner's case violated due process.

Respondent filed a Rule 5 Answer and Motion to Dismiss. Robinson replied by filing a partial traverse to the Motion to Dismiss; though he was granted time to file additional information, he has not done so. Therefore, this matter is now ripe for disposition.

## II.

The threshold inquiries for federal habeas review under 28 U.S.C. § 2254 are (1) whether the petitioner has exhausted his claims before state courts and (2) whether these claims are procedurally barred by a state rule.

■ It appears from the record, and respondent agrees, that Robinson appropriately exhausted state remedies with regard to his first claim. It is the second claim that is the focus of the parties' exhaustion dispute. Respondent argues this claim has not been exhausted because it was not presented to the Supreme Court of Virginia. Respondent also argues that

Robinson's second claim is procedurally defaulted because he failed to raise this claim on direct appeal. *See Slayton v. Parrigan*, 215 Va. 27, 205 S.E.2d 680 (1974) (holding that claims eligible for review on direct appeal must be raised on direct appeal or be defaulted from habeas review), *cert. denied*, 419 U.S. 1108, 95 S.Ct. 780, 42 L.Ed.2d 804 (1975). Both arguments are unpersuasive.

Robinson's petition reflects that he raised the second claim in the Supreme Court of Virginia on direct review through a petition for rehearing. Therefore, the second claim has been exhausted and was not procedurally defaulted and, it follows that federal habeas review of the merits of both claims is appropriate. *See* 28 U.S.C. § 2254.

## III.

*Claim 1*

■ The parties' positions on the merits of the first claim may be summarized as follows: Robinson claims that the trial court erred in admitting hearsay regarding the price of the stolen coats. Respondent correctly argues in response that Robinson's first claim must be dismissed because a dispute over a Virginia trial court's application of the Virginia rules of evidence is a matter of state law and, as such, it is not eligible for federal review.

■ Violations of state law or procedure that do not infringe specific federal constitutional protections are not cognizable under 28 U.S.C. § 2254. *See Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990); *Chance v. Garrison*, 537 F.2d 1212, 1215 (4th Cir.1976) (citing *Grundler v. North Carolina*, 283 F.2d 798, 802 (4th Cir.1960)). In particular, absent "circumstances impugning fundamental fairness or infringing specific constitution-

---

**3.** *See Walls v. Commonwealth*, 248 Va. 480, 450 S.E.2d 363, 364 (1994); *Wright v. Com-* *monwealth*, 196 Va. 132, 82 S.E.2d 603, 607 (1954).

al protections," admissibility of evidence does not present a federal question. *Grundler*, 283 F.2d at 802; *see Estelle*, 502 U.S. at 67–68, 112 S.Ct. 475; *Spencer v. Murray*, 5 F.3d 758, 762 (4th Cir.1993), *cert. denied*, 510 U.S. 1171, 114 S.Ct. 1208, 127 L.Ed.2d 555 (1994). Moreover, errors in interpretation of state evidentiary law do not give rise to a due process violation. *See Estelle*, 502 U.S. at 72, 112 S.Ct. 475 ("The only question for us is 'whether the [alleged error] by itself so infected the entire trial that the resulting conviction violates due process.' ") (quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)).

These settled principles, applied here, compel the conclusion that Robinson's first claim raises no more than an issue of state evidentiary law and is not eligible for federal habeas corpus review. *See Estelle*, 502 U.S. at 72, 112 S.Ct. 475 (violations of state procedure that do not infringe specific constitutional protections are not cognizable on federal habeas review). Therefore, this claim must be dismissed.

*Claim 2*

■ Robinson's second claim alleges that in affirming his conviction, the Supreme Court of Virginia violated his due process rights by fashioning a new exception to the hearsay rule and applying it retroactively to his case. The crux of this due process claim is the absence of fair notice. Specifically, Robinson contends that it was fundamentally unfair for the Supreme Court of Virginia to fashion a new rule of evidence in the course of his appeal and then apply it, in effect retroactively, to him. The essential error of Robinson's argument is that while due process entitles a criminal defendant to notice of the charge against him, including the offense elements the prosecution must prove, it does not require that a criminal

defendant have notice of precisely how the government intends to prove each of those elements.[4] In other words, in this context, due process requires that Robinson have notice that the government, in seeking a conviction, would have to prove that the value of the coats was above two-hundred dollars ($200). But significantly, the Due Process Clause does not require that Robinson receive advance notice of precisely how the government intended to prove this offense element, whether by testimony of a sales clerk, by the business records exception, by an expert, or by contending for a new rule of admissibility. There is, in short, no due process right that entitles criminal defendants to pretrial notice of precisely what evidence the prosecution will present to prove the charges in the indictment.

This principle finds expression in *Gray v. Netherland*, 518 U.S. 152, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996), where the Supreme Court, *inter alia*, rejected a petitioner's request for habeas relief based on a due process notice of evidence claim. Speaking for the majority, Chief Justice Rehnquist noted that:

> A defendant's right to notice of the charges against which he must defend is well established. But a defendant's claim that he has a right to notice of the evidence that the state plans to use to prove the charges stands on quite a different footing. We have said that "the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded." ... To put it mildly, these cases do not compel a court to order the prosecutor to disclose his evidence; their import, in fact, is strongly against the validity of petitioner's claim.

---

4. There are, to be sure, some instances, none of which are applicable here, where the prosecution is obligated, by Federal Rule for example, not due process, to provide a defendant with advance notice of certain kinds of evidence the prosecution may use. *See, e.g.*,

Fed.R.Crim.P. 16(a)(1)(A)–(E) (requiring advance notice of, among others, defendant's statements and prior record); Fed.R.Evid. 404(b) (requiring that advance notice of intent to introduce prior bad acts evidence).

*Id.* at 167–168, 116 S.Ct. 2074 (citations omitted). The Chief Justice continued by noting that only the adoption of a new constitutional due process rule would allow petitioner to prevail. *See id.* at 167, 116 S.Ct. 2074. And this avenue of relief was foreclosed because neither of the exceptions to non-retroactivity of new constitutional rules established in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), applied to petitioner's notice of evidence claim. *See id.* at 170, 116 S.Ct. 2074.[5]

More recently, the Fourth Circuit echoed the principle of *Gray* to deny habeas relief to a petitioner in a capital case. *See Barnabei v. Angelone,* 214 F.3d 463 (4th Cir.), *cert. denied,* —— U.S. ——, 121 S.Ct. 24, 147 L.Ed.2d 1047 (2000). In *Barnabei,* the petitioner ("Barnabei") challenged the validity of his 1995 conviction for rape and murder, asserting, *inter alia,* that he was denied due process during the penalty phase of his trial when his ex-wife testified that Barnabei attempted to force her to have anal sex on one occasion. *See id.* at 473. Barnabei had previously requested notice of any evidence of unadjudicated criminal conduct that the prosecution might offer. In response, the prosecution, three weeks prior to trial, described "a continuous course of threatening and assaultive conduct against [Barnabei's ex-wife]." *Id.* at 472. Barnabei claimed his due process rights were violated because this general statement was insufficient to put him on notice of the specific evidence of unadjudicated conduct that the prosecution ultimately offered. The Fourth Circuit assumed arguendo that the notice was deficient and that Barnabei had therefore

effectively received no notice at all. *See id.* at 473 Even so, the panel refused to find a due process violation in the lack of notice, noting that Barnabei had pointed to no post-*Gray* precedent that "would allow us to ignore *Gray*'s holding or that establishes that due process requires advance notice of the specific evidence of unadjudicated conduct that the prosecution intends to introduce...." *Id.* at 473.

■ *Gray* and *Barnabei* are dispositive of Robinson's principal due process claim.[6] The result reached in those cases obtains here for the same reasons. Robinson, like the petitioners in *Gray* and *Barnabei,* argues that he has been denied due process of law in that he was given no advance notice of the specific evidence that would be offered against him. Also like those petitioners, Robinson points to no authority that establishes: i) that due process currently requires advance notice of the specific evidence that the prosecution intends to introduce, or ii) that such a new constitutional rule can be adopted under either of the *Teague* exceptions to the retroactive application of a rule of law. As a result, Robinson fails to establish the existence of a due process right to know in advance that the government would seek to prove the value of the stolen property by arguing that the price tags were, in themselves, reliable, non-hearsay admissible evidence. Accordingly, his claim to the contrary must be dismissed.

■ Robinson advances a further, equally flawed due process claim by arguing that the admission of the price tags violated the Due Process Clause because it shifts the burden of proof to the defendant.

---

5. *Teague* held that new constitutional rules could not be announced or applied in federal habeas review unless they fall within one of two narrow exceptions. "The first exception permits the retroactive application of a new rule if the rule places a class of private conduct beyond the power of the State to proscribe." *Saffle v. Parks,* 494 U.S. 484, 494, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990) (citing *Teague,* 489 U.S. at 311, 109 S.Ct. 1060). "The second exception is for 'watershed rules

of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Parks,* 494 U.S. at 495, 110 S.Ct. 1257 (citing *Teague,* 489 U.S. at 311, 109 S.Ct. 1060).

6. It is immaterial *Gray* and *Barnabei* involved the punishment phase and not the guilt-innocence phase of a criminal trial; due process is fully operative in both contexts.

Robinson's burden-shifting due process argument is quite simply wrong. It conflates the burden of proof, which is obligatory and always on the prosecution, with the opportunity to rebut the prosecution case, which is not obligatory, but always available to a criminal defendant. In Robinson's case, the burden of proving the value of the stolen coats as an element of the charged offense was always on the prosecution, which sought to carry its burden by offering the price tags. Once the prosecution succeeded in its argument that the price tags were admissible to prove value, the burden of proof did not shift to Robinson; rather, Robinson then had the opportunity, but not the obligation, to offer evidence to rebut the price tags. Robinson also was entitled to choose to offer no evidence to rebut the price tags, but to argue instead that the price tags were unreliable or otherwise unpersuasive on the issue of the coats' value. In summary, the admission of the price tags was only the means by which the prosecution sought to carry its burden of proving an element of the charged offense, and like all of the prosecution's evidence in the case-in-chief, it had only this effect and not any burden-shifting effect.

The flaw in Robinson's burden-shifting argument is highlighted by his reliance on *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). That case is distinguishable, not analogous. *Mullaney*, unlike the instant case, involved a Maine rule that required a defendant charged with murder to prove that he acted in the heat of passion on sudden provocation to reduce the homicide to manslaughter. There is little doubt, as Justice Powell noted, that Maine has "affirmatively shifted the burden of proof to the defendant," an impermissible contravention of due process. *Id.* at 701; see also *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). By no means is the Maine rule analogous to the decision by the Virginia courts to admit price tags as reliable evidence of value. By providing that a defendant may rebut price tag evidence, the Supreme Court of Virginia has not shifted the burden of proof, but rather has simply noted that the price tag evidence is subject to the adversarial testing that all evidence must undergo. A simple example clarifies the distinction between challenging the reliability of evidence and shifting the burden of proof on an element of the offense to the defendant. While eyewitness testimony that a defendant shot a victim is prima facie evidence of homicide, the admission of the testimony does not shift the burden of proof, even though it is true that a defendant is entitled to rebut this evidence, either on cross-examination or by independent evidence, showing that the eyewitness was unreliable, biased, or otherwise not credible.

In summary, Robinson's complaint concerning the Virginia courts' admission of the price tag testimony does not implicate due process, but is instead a complaint concerning a state evidentiary ruling, not cognizable on federal habeas review. *See Estelle*, 502 U.S. at 72, 112 S.Ct. 475.

IV.

An appropriate Order will issue.