Present: Lemons, C.J., Goodwyn, Mims, Powell, Kelsey, and McCullough, JJ., and Russell, S.J.

LATOYA DENISE JEFFERSON

OPINION BY
v. Record No. 181114          CHIEF JUSTICE DONALD W. LEMONS
OCTOBER 24, 2019
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we consider whether the Court of Appeals of Virginia ("Court of Appeals") erred when it determined that the evidence presented at Latoya Denise Jefferson's ("Jefferson") trial in the Circuit Court of Pittsylvania County ("circuit court") was sufficient to uphold her convictions for welfare fraud under Code § 63.2-522. Additionally, we consider whether the Court of Appeals properly held that the circuit court did not abuse its discretion by limiting Jefferson's cross-examination of a witness regarding the amount of benefits she would have received under the Supplemental Nutrition Assistance Program ("SNAP") if she had reported all of her income.

I. Facts and Proceedings

A. The Evidence at Trial

A grand jury indicted Jefferson on two counts of felony welfare fraud under Code § 63.2-522, charging her with obtaining "assistance or benefits of a value of $200.00 or more to which she was not entitled" during two periods, March 1, 2015 to August 31, 2015, and September 1, 2015 to February 29, 2016. Jefferson pleaded not guilty, and a one-day bench trial was held.

Sharon Stephens ("Stephens"), an "eligibility worker" for the Pittsylvania County Department of Social Services ("Department"), testified that in February 2015, she received a renewal application completed by Jefferson for SNAP benefits. The application required Jefferson to report "money from all jobs" for all members of her household. In response to this

question, Jefferson disclosed income from her employment with Citi Trends and income from her boyfriend's employment with Capps Shoes.

In March 2016, Jefferson submitted another renewal application for SNAP benefits to the Department. Like the February 2015 renewal application, Jefferson disclosed household income from Citi Trends and Capps Shoes. Jefferson answered "no" to the question "[h]as anyone [in your household] been fired, laid off, . . . quit a job, or reduced hours worked since you applied?"

Stephens testified that after she received the March 2016 renewal application, she "pulled a separate report to check [for additional] income," which indicated Jefferson "had a job" at PepsiCo that "was never reported." During an interview, Stephens asked Jefferson about the undisclosed employment with PepsiCo. Jefferson admitted that she had worked at PepsiCo, but stated that she "[wa]s no longer working there." A human resources coordinator for Frito Lay, a subsidiary of PepsiCo, later testified that Jefferson worked at PepsiCo from November 2014 to February 2016.

Cheryl Fisk, the assistant director of the Department, testified that in November 2015, Jefferson applied for fuel assistance. Fisk explained that the "application [for fuel assistance] require[d]" Jefferson to provide "all of the people in [her] household and all of the income paid to them." On the application, Jefferson disclosed her employment with Citi Trends and her boyfriend's employment with Capps Shoes, but did not disclose her employment with PepsiCo. Fisk testified that the Department approved the fuel application and mailed Jefferson a check for $376.

Dawn Hankins ("Hankins"), a fraud investigator for the Department, testified that she met with Jefferson in August 2016, "to discuss her public assistance SNAP case." During the meeting, Hankins reviewed the income section of the February 2015 renewal application with

2

Jefferson. Hankins asked Jefferson if the employment she reported was her "only household income" when she completed the application. Jefferson replied that "she might have had a part-time job at th[at] time," which she "thought she had started [] around December 2014." When asked why she did not "report the income" from that job, Jefferson stated that "she didn't know how long she was going to be working there," and "didn't think she had to report it because it wasn't over the food stamp SNAP limit." Hankins also reviewed the fuel assistance application with Jefferson. Hankins "told [Jefferson] she had failed to include the income from PepsiCo on [the application]," and Jefferson "stated yes" in response.

Hankins testified that she reviewed the SNAP benefits Jefferson received between March 2015 and February 2016 and determined that Jefferson's unreported income "affect[ed] the amount of benefits she should have received." She explained that "[t]he more income [Jefferson] had, the less benefits she was entitled to." She created a document titled "overpayment calculation" by inputting Jefferson's unreported income "month by month into [the Department's] computer database." The computer database then generated the overpayment calculation, which was admitted into evidence as an exhibit. The overpayment calculation includes the following chart showing the overpayment in SNAP benefits for each month:

| MM/YYYY | Benefits Received | Benefits Should Have Received | Overpayment |
|---------|-------------------|-------------------------------|-------------|
| 03/2015 | 652.00 | 452.00 | 200.00 |
| 04/2015 | 494.00 | 218.00 | 276.00 |
| 05/2015 | 494.00 | 0.00 | 494.00 |
| 06/2015 | 494.00 | 179.00 | 315.00 |
| 07/2015 | 494.00 | 180.00 | 314.00 |
| 08/2015 | 494.00 | 211.00 | 283.00 |
| 09/2015 | 494.00 | 0.00 | 494.00 |
| 10/2015 | 558.00 | 178.00 | 390.00 |
| 11/2015 | 558.00 | 265.00 | 303.00 |
| 12/2015 | 558.00 | 414.00 | 154.00 |
| 01/2016 | 558.00 | 407.00 | 161.00 |
| 02/2016 | 558.00 | 553.00 | 15.00 |
| TOTAL | 6456.00 | 3057.00 | 3399.00 |

Based on the chart, the total overpayment in SNAP benefits for the period covered by the first indictment (March 1, 2015 to August 31, 2015) is $1,882. The total overpayment in SNAP benefits for the period covered by the second indictment (September 1, 2015 to February 29, 2016) is $1,517. Hankins also testified that Jefferson received a fuel assistance overpayment of $37.14.

On cross-examination, when asked if SNAP "benefits are based upon net income," Hankins explained, "the benefits are based *first* on gross income. If it passes the gross income limit, then it gives you some deductions off your gross income and the benefits are based on that [net] income. If you pass the *first* screening, it takes you to the *second* screening." Hankins stated that the "gross" income limit is $3980 per month. Hankins initially testified that Jefferson's household income was "over the gross" income limit for SNAP benefits for two months, May and September 2015. As a result, Jefferson was "not eligible" for SNAP benefits in those months. However, after reviewing Jefferson's income, Hankins stated that Jefferson's gross household income "kept her deductions from coming off the top, which made her over the [net] income limit" but "not over" the "gross pay" limit for those months.[*]

Hankins also explained that certain deductions were not used when calculating the overpayments in SNAP benefits. Jefferson did not receive a $600 "housing deduction" for March 2015, but received the deduction for "every [other] month." Hankins did not "know why" the housing deduction was not applied to income from March 2015. Hankins further explained that an "earned income deduction" of 20% was applied to income from Citi Trends and Capps

---

[*] The overpayment calculation indicates that Hankins was referring here to the net income limit. Taking into account applicable deductions, Jefferson was over the net income limit and thus not eligible for SNAP benefits in those months.

4

Shoes, but was not applied to income from PepsiCo. Hankins stated that pursuant to "policy," "unreported income does not get the [earned income] deduction."

Hankins did not know the amount of SNAP benefits Jefferson would have received if she had reported the PepsiCo income:

> Q. [W]e don't know if she [disclosed] the [PepsiCo] income, what the amount of benefits she would have received [is]?
> A. No.
> Q. We don't know what that number is.
> A. No.

Hankins testified that Jefferson "would have gotten the [earned income] deduction[]" if she had reported the PepsiCo income. Applying the deduction "would have made a difference in the benefit[s], [but] the benefits would still have gone down because [Jefferson] had more income." When Jefferson asked if "that number would have been the number that she would have been entitled to," the Commonwealth objected on two grounds, arguing the question "assum[ed] facts not in evidence" and had "already been testified about." The circuit court sustained the objection. Jefferson concluded her cross-examination of Hankins after the circuit court sustained the objection.

When the Commonwealth rested, Jefferson moved to strike the evidence, arguing that the Commonwealth did not present evidence "showing beyond a reasonable doubt that the value of any assistance or benefits that [Jefferson] . . . [should not have] receive[d] was a value above $200." Jefferson asserted that due to the "policy" that unreported income does not qualify for the earned income deduction, there was "insufficient evidence" of the "amount of the overpayment[s]." The circuit court denied the motion to strike, noting that the Department "determines eligibility [for] the benefits and the calculation" of benefits.

Testifying in her own defense, Jefferson denied "attempt[ing] to receive benefits" to which she was not entitled. She explained that her "understanding" was that she "had to report" a change in her household income if it exceeded $3980 per month. She stated that after Stephens asked her about her PepsiCo income, she told Stephens that the job was "part time" and that she "no longer work[ed] there."

Jefferson renewed her motion to strike at the close of all the evidence. She conceded "[t]here [wa]s evidence that she did not identify the [PepsiCo] income on her renewal application." However, she asserted the overpayments should be determined by finding the "difference" between the "amount actually paid" and "the amount she would have been eligible for had the [PepsiCo income] been [reported]." Because the Commonwealth did not present evidence of the difference, Jefferson submitted that she "should be [found] guilty of [two] misdemeanor[s] as opposed to [two] felony larceny count[s]."

The Commonwealth responded that the "amount of the fraud" was "what she should have received" as calculated by the Department and shown on the overpayment calculation. Because the overpayments during the periods covered by each indictment were "well over $200," the Commonwealth argued that the court should find Jefferson guilty of "two grand larceny" counts.

After hearing closing argument, the circuit court found Jefferson guilty of two counts of welfare fraud as charged in the indictments. When announcing its finding, the court observed that Jefferson "received $6,456 in [SNAP] benefits," but "should have only received $3,057." The court also noted the PepsiCo income "makes a big difference," and "would have reduced [Jefferson's] benefits almost by half." The court later sentenced Jefferson to six years'

imprisonment with six years suspended. The court also ordered Jefferson to pay restitution of $3,436.14, which is the total amount of overpayments in SNAP benefits and fuel assistance.

## B. Court of Appeals Opinion

The Court of Appeals, by unpublished opinion, affirmed Jefferson's convictions. *Jefferson v. Commonwealth*, No. 0638-17-3, slip op. at 6 (Mar. 20, 2018). Observing that "no evidence indicated [Jefferson] did disclose" income from PepsiCo, the Court of Appeals determined that any testimony by Hankins as to the amount Jefferson's SNAP "benefits would have been had she disclosed the income would have been purely hypothetical, and thus irrelevant." *Id*. at 4. Additionally, because Jefferson "was not entitled to a 20% earned income deduction from undisclosed income" pursuant to the Department's "policy," any testimony about applying that deduction "would not have had any tendency to establish . . . how much [Jefferson] received in benefits overpayments." *Id*. Accordingly, the Court of Appeals concluded that the circuit court "did not abuse its discretion" when "it did not allow [Jefferson] to finish cross-examining Hankins about the amount of benefits she would have received had she reported her [PepsiCo] income." *Id*. at 3-4.

The Court of Appeals also held that the circuit court's "denial of the motion to strike was neither plainly wrong nor without evidentiary support." *Id*. at 5. In reaching its holding, the Court of Appeals noted that the Department's "overpayment calculations reflect excess SNAP benefits of $1,900 during the period covered by [Jefferson's] first indictment, and $1,517 during the period covered by [Jefferson's] second indictment." *Id*. Further, because Hankins testified that "undisclosed income is not eligible to receive" a "20% earned income deduction," the "evidence directly contradict[ed] [Jefferson's] argument that her undisclosed income should have been treated as disclosed income for purposes of calculating her benefit overpayments." *Id*. The

7

Court of Appeals concluded that "a rational trier of fact could have found from the evidence that [Jefferson] received welfare benefits overpayments worth $200 or more during each of the indictment periods." *Id.*

Jefferson subsequently appealed to this Court, and we granted an appeal on the following assignments of error:

> 1. The Court of Appeals erred in finding no error where the trial Court erred in not allowing Counsel to finish cross-examining the Commonwealth's witness about the alleged overpayment.
>
> 2. The Court of Appeals erred in finding no error where the trial Court erred in denying Counsel's Motion to Strike on the grounds of insufficient evidence for a showing that the defendant received an overpayment of two hundred dollars or more, thereby making it a felony as opposed to a misdemeanor.

## II. Analysis

### A. Standard of Review

When reviewing the sufficiency of the evidence to support a conviction, "the relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010). The "judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it." *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). We review questions of statutory interpretation de novo. *Baker v. Commonwealth*, 284 Va. 572, 576 (2012). Accordingly, we review de novo whether the Commonwealth's evidence of overpayments in SNAP benefits was calculated using the proper method under Code § 63.2-522. By contrast, the circuit court's factual finding that the overpayments met the statutory threshold for grand larceny during both periods in the

8

indictments is reviewed "with the highest degree of appellate deference." *Bowman v.*

*Commonwealth*, 290 Va. 492, 496 (2015).

"[W]e review a trial court's decision to admit or exclude testimony using an abuse of

discretion standard." *Commonwealth v. Proffitt*, 292 Va. 626, 634 (2016) (alteration in original).

"The abuse of discretion standard draws a line—or rather, demarcates a region—between

the unsupportable and the merely mistaken, between the legal error . . . that a reviewing court

may always correct, and the simple disagreement that, on this standard, it may not." *Reyes v.*

*Commonwealth*, 297 Va. 133, 139 (2019) (alteration in original) (quoting *Lawlor v.*

*Commonwealth*, 285 Va. 187, 213 (2013)).

B.  Code § 63.2-522

We turn first to whether the overpayments in SNAP benefits were calculated using the

proper method under Code § 63.2-522.  The statute provides in relevant part:

> Whoever obtains, or attempts to obtain . . . by means of a willful
> false statement or representation, . . . public assistance or benefits
> from other programs designated under regulations of the [State]
> Board [of Social Services], . . . to which he is not entitled . . . is
> guilty of larceny.

Code § 63.2-522.  Because the statute does not state whether a violation of its provisions is grand

or petit larceny, it must be read in connection with Code §§ 18.2-95, 18.2-96, which define petit

and grand larceny based on the value of the stolen property.  *See, e.g.*, *Greenwalt v.*

*Commonwealth,* 224 Va. 498, 500 (1982) ("[A] person violating [Code § 43-13] is guilty of

larceny, and, if the amount involved exceeds $200, the crime is a felony."); *Wright v.*

*Commonwealth*, 196 Va. 132, 133 (1954) ("Since an offence against [former Code § 18-169] is

made larceny, without specifying either the punishment or the degree of larceny, the statute must

be read in connection with [former] Code[ ] § 18-164," which provided statutory thresholds for

9

grand larceny). The version of Code § 18.2-95 in effect during the periods specified in the indictments provided that "[a]ny person who . . . commits simple larceny not from the person of another of goods and chattels of the value of $200 or more . . . shall be guilty of grand larceny." Former Code § 18.2-95. Therefore, the Commonwealth was required to prove that during each of the indictment periods, the value of public assistance or benefits Jefferson received in excess of the amount to which she was entitled was $200 or more.

The Commonwealth maintains that the Department's policy regarding the calculation of overpayments controls how the degree of larceny under Code § 63.2-522 is determined. Specifically, the Commonwealth argues that, when determining whether the amount of SNAP benefits Jefferson was not entitled to meets the $200 threshold, we are bound by the Department's policy that unreported income is ineligible for an earned income deduction. We disagree.

"[S]tatutory interpretation is a pure question of law." *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007). Code § 63.2-522 prohibits the receipt of public assistance or benefits "to which [a person] is not entitled." Accordingly, we hold that when determining whether the value of fraudulently obtained public assistance or benefits meets the statutory threshold for grand larceny, the proper valuation method is the difference between the amount of public assistance or benefits the defendant received, and the amount of public assistance or benefits he would have been entitled to absent fraud. The amount of public assistance or benefits a defendant would have been entitled to necessarily includes any deductions he would have been eligible for if he had reported all of his income.

Although the Department did not use this valuation method when calculating the overpayments, the evidence presented at trial established that Jefferson received excess SNAP

benefits of $200 or more. "[T]o prevail in a prosecution [under Code § 18.2-95, the Commonwealth] must prove beyond a reasonable doubt not the exact value of stolen property, but only that its value exceeded the statutory minimum." *Walker v. Commonwealth*, 281 Va. 227, 230 (2011). The Department's overpayment calculation reflects excess SNAP benefits of $1,882 during the period covered by the first indictment, and $1,517 during the period covered by the second indictment. Applying a 20% earned income deduction to the PepsiCo income would not have reduced the total overpayment for each indictment period to less than $200. Additionally, applying a $600 housing deduction when calculating the benefits for March 2015 would not have reduced the total overpayment for the first indictment period to less than $200. Therefore, the Court of Appeals did not err in holding that the Commonwealth presented sufficient evidence of overpayments in SNAP benefits of $200 or more.

We further hold that there is no reversible error in the Court of Appeals' ruling that the circuit court did not abuse its discretion by limiting Jefferson's cross-examination of Hankins. Assuming without deciding that limiting Jefferson's cross examination of Hankins was error, any error was harmless. Because the evidence presented at trial clearly established that the overpayments met the statutory threshold for grand larceny, any further cross-examination of Hankins regarding the amount of SNAP benefits Jefferson would have received if she had reported her PepsiCo income would not have demonstrated that the overpayments were less than the statutory threshold. Accordingly, we will affirm the part of the judgment of the Court of Appeals upholding the convictions for welfare fraud. However, because the restitution award was based on the Department's improper calculation of overpayments in SNAP benefits, we will vacate the part of the judgment of the Court of Appeals affirming the restitution award, with

11

direction to remand this case to the circuit court for a determination of the amount of restitution in a manner consistent with our opinion.

## III.  Conclusion

For the reasons stated, we affirm the part of the judgment of the Court of Appeals upholding the convictions.  We will vacate the part of the judgment of the Court of Appeals affirming the restitution award, and remand this case to the Court of Appeals with direction that it remand the case to the circuit court for a determination of the amount of restitution.

*Affirmed in part,*
*vacated in part,*
*and remanded.*